230 F.2d 224
 TAMPA TIMES COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Tampa Television Company, Intervenor.
ORANGE TELEVISION BROADCASTING COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Tampa Television Company, Intervenor.
 No. 12588.
 No. 12589.
 United States Court of Appeals District of Columbia Circuit.
 Argued October 12, 1955.
 Decided February 9, 1956.
 
 Mr. Thomas H. Wall, Washington, D. C., with whom Messrs. Fred W. Albertson, John B. Jacob and Jerome H. Heckman, Washington, D. C., were on the brief, for appellant in No. 12588. Mr. Thomas J. Dougherty, Washington, D. C., also entered an appearance for appellant in No. 12588.
 Mr. Marcus Cohn, Washington, D. C., with whom Mr. Stanley Neustadt, New York City, was on the brief, for appellant in No. 12589. Miss Sylvia D. Kessler, Washington, D. C., also entered an appearance for appellant in No. 12589.
 Mr. Henry Geller, Counsel, Federal Communications Commission, Alexandria, Va., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, with whom Mr. Warren E. Baker, General Counsel, Federal Communications Commission, and Mr. J. Smith Henley, Assistant General Counsel, Federal Communications Commission, were on the brief, for appellee in both cases.
 Mr. Vincent B. Welch, Washington, D. C., for intervenor in both cases. Mr. Robert L. Heald, Washington, D. C., also entered an appearance for intervenor in both cases.
 Before PRETTYMAN, WILBUR K. MILLER, and DANAHER, Circuit Judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 There were three applicants for a permit to construct and operate a commercial television station on Channel 13 at Tampa, Florida. The award went to Tampa Television Company, which we shall call "Television". Tampa Times Company, which we shall call "Times", and the Orange Television Broadcasting Company, hereinafter called "Orange", appeal. The appeals were consolidated.
 
 
 2
 All procedural requirements were duly observed by the Commission. Its final decision and its decision upon the petitions for reconsideration are full and clear. The bases upon which the award was made are readily understood from the findings and conclusions. The attacks by appellants are upon the merits of the ultimate findings and conclusions in the light of their view of the evidence in the record. The points urged by the two appellants are substantially similar.
 
 
 3
 Times says the Commission was arbitrary in that it drew wholly irrational conclusions — (1) holding that Television was to be preferred as most likely to carry out its proposals, (2) failing to hold against Television the past record of radio station WALT, (3) giving Television a preference for integration of ownership and management, (4) refusing to compare the past records of Television and Times, (5) preferring Television for its program proposals, (6) failing to give Times a preference for its ability to carry out its program proposals, and (7) in its application of its diversification policy in respect to media of mass communication.
 
 
 4
 Orange says the Commission's preference of Television over it (Orange) rested upon three grounds: (1) ability to carry out its program proposals, (2) integration of ownership and management, and (3) several regular programs to be broadcast from a studio in St. Petersburg.
 
 
 5
 A central thread through much of appellants' argument is a vigorous, emphatic and sustained attack upon one W. Walter Tison, a key figure in the ownership and proposed operation of the successful applicant, Television. The crucial consideration, all parties seem to agree, was the Commission's judgment upon Tison's past record. Discussion of that topic will serve to demonstrate the decision which must be reached here.
 
 
 6
 Tison, individually, had owned and operated radio station WALT. He is the largest single stockholder in Television, owning 20 per cent of its stock, and is to be the actual manager of the station. Other stockholders will devote part time to supervisory activities. Appellants say Tison's record as a broadcaster was so bad that any preferences given Television on any subject with which he is to be connected are arbitrary and capricious, and that any failure to give appellants, or one of them, a preference because of his connection with Television is likewise arbitrary and capricious. They say WALT never broadcast a regularly scheduled discussion program or a non-commercial religious program, that it broadcast a song of questionable taste, that it devoted considerable time to horse racing information, that it broadcast only 1.2 per cent and 2 per cent live sustaining programs in 1951 and 1952 (although for 1952 it had promised 6.67 per cent), regularly broadcast talks by John T. Flynn on controversial subjects without seeking spokesmen of opposing views, and broadcast double and triple spot announcements. All these points were made before the Commission. All were discussed by it.
 
 
 7
 The Commission found the lack of regularly scheduled discussion programs on WALT to be a factor "certainly not in WALT's favor" and similarly found the failure to schedule a commentator with views contrary to Flynn's to be adverse. However it noted the difficulties of a small station in respect to such subjects. WALT was a 1 kw daytime-only station. Upon examining the facts in detail the Commission did not find the racing programs of WALT in conflict with the public interest. It found one song broadcast by WALT "to border on being in questionable taste"; the fact that the three religious programs were on a commercial basis not against the public interest; the total "spots" for a week not unreasonable, but the frequency of such spots in certain intervals an adverse factor. It found serious Tison's failure to carry out his commitment as to live sustaining programs, but it noted that the whole picture as to live programs — including commercial — was not developed and a complete finding on the topic was not possible. It noted that WALT, being a small station in competition with several more powerful, full-time network stations, had developed a specialized format of Spanish, hillbilly and westerntype programming, designed to reach an audience not served by the larger stations and to appeal to small advertisers. It noted several favorable aspects in WALT's operation. These were the civic results of the Spanish programs; the time given by WALT to community interests, the University of Tampa, and the public schools; and several items of noteworthy programming (one given six times a week), book reviews, Saturday programs for a college and for veterans, daily agriculture programs, etc. The Commission noted that it had twice renewed the WALT license. It concluded that the operation of WALT was in the public interest.
 
 
 8
 Then the Commission considered factors other than those connected with WALT, such as the assurances of the other important stockholders of Television, the thorough preparation of Television for its operation, the use of a program advisory committee, and the commendable operation of station WFLA under Tison's management from 1927 to 1940. It did not give Tison credit for an excellent past record, but it concluded that the weight of the evidence pointed overwhelmingly to a determination that Television could be relied upon to carry out its program commitments.
 
 
 9
 Appellants say the judgment of the Commission in respect to Tison was arbitrary and capricious. We do not find it so. While the underlying factors may have been conflicting and subject to different ultimate inferences, the result was reasoned and, we think, well within the bounds of permissible judgment.
 
 
 10
 The Commission, evaluating various factors of comparison, awarded some preferences to one applicant and some to another. But principally it gave Television decisive preferences upon integration of management and ownership and upon diversification of media of mass communication. It gave the first preference because the actual day-to-day management of the station is to be in the hands of a 20 per cent stockholder — its largest stockholder — whereas in the cases of the other two applicants the actual management would be in the hands of employees, the stockholders' functions being entirely supervisory. It gave the other preference over Times because Times owns two radio stations and one of the two daily newspapers in Tampa, whereas Television owns no other mass media interests.
 
 
 11
 The foregoing is a sufficient description of the issues in the cases to show that they are in that area in which, under the doctrine of the recent decisions in Pinellas Broadcasting Co. v. Federal Communications Commission[1] and McClatchy Broadcasting Co. v. Federal Communications Commission,[2] the Commission has been given wide powers of judgment. The Congress conferred upon the Commission the task and the responsibility of evaluating comparative claims of mutually exclusive applicants. So long as it observes all procedural requirements, considers the issues, reaches reasoned conclusions, and renders reasoned judgment, courts cannot superimpose their opinions upon these matters.
 
 
 12
 Orange complains that the Commission found against it on its ability to carry out its program proposals, in that Orange proposed to make way for some local programs by kinescoping certain network programs and broadcasting them at other than the scheduled times, and the Commission found that Orange failed to meet the burden of showing the feasibility of that plan. The Commission's conclusions are clearly explained. The dispute lies in an area in which the judgment of the Commission must prevail.
 
 
 13
 Times complains bitterly that the award of a preference against it because of the diversification factor was arbitrary, because, it says, that action was in direct conflict with the immediately prior decision of the Commission upon the point in Pinellas. But we think the contention is not well grounded. In both cases the applicant not associated with other mass media was awarded a preference on the point. The final result was a comparative evaluation of all points pro and con. In the Pinellas case the winning applicant, Tribune, was found markedly superior to its rivals on several other points, outweighing its diversification disadvantage. In the present case the Commission did not find the weight of all factors to be in that direction.
 
 
 14
 We think we could not disturb the judgment of the Commission upon the issues in this case, even if we should be inclined to do so. Its order is, therefore,
 
 
 15
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 97 U.S.App.D.C. ___, 230 F.2d 204 (1956)
 
 
 [2]
 98 U.S.App.D.C. ___, ___ F.2d ___ (1956)