Roy L. ALBERTSON, Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee, Jet Broadcast-
ing Company, Intervenor.

No. 12936.

United States Court of Appeals
District of Columbia Circuit.

Argued June 12, 1956.

Decided Feb. 7, 1957.

Mr. Dwight D. Doty, Washington,
D. C., with whom Messrs. Andrew G.
Haley and J. Roger Wollenberg, Wash-
ington, D. C., were on the brief, for
appellant.

Mr. Henry Geller, Counsel, Federal
Communications Commission, with whom
Messrs. Warren E. Baker, Gen. Counsel,
Richard A. Solomon, Asst. Gen. Counsel,
and John J. O'Malley, Jr., Counsel, Fed-
eral Communications Commission, were
on the brief, for appellee. Mr. J. Smith
Henley, Associate Gen. Counsel, Federal
Communications Commission, also enter-
ed an appearance for appellee.

Mr. Harry J. Daly, Washington, D. C.,
with whom Mrs. Lenore G. Ehrig, Wash-
ington, D. C., was on the brief, for inter-
venor.

Before WILBUR K. MILLER, WASH-
INGTON and DANAHER, Circuit Judg-
es.

DANAHER, Circuit Judge.

Albertson has asked us to reverse an
order of the Commission which had al-
lowed WJET, in Erie, Pennsylvania,
operating daytime only on a frequency
of 1570 kc, to commence unlimited opera-
tion on a frequency of 1400 kc. Oppos-
ing, Albertson asserted that his station,
WBNY, at Buffalo, New York, operating
on 1400 kc, would receive objectionable
interference.

The Commission ordered a hearing
upon specified issues after which the
Hearing Examiner's Initial Decision
recommended allowance of the applica-
tion. Populations losing WBNY service
were deemed negligible as compared to
the remaining WBNY interference-free

population. WJET would bring a new primary nighttime service to some 135,000 persons in an area of 30.4 square miles. Various other detailed findings as to type and character of programs to be available supported generally the Examiner's conclusions. Albertson filed exceptions. After oral argument before the Commission *en banc*, the intervenor's application was granted.

This case is only remotely like Democrat Printing Co. v. Federal Communications Comm.,[1] where the Commission authorized construction of a new station which would displace the adjacent signal of an existing station in an area including as much as 41% of the population previously served by that station. Moreover, the Examiner had excluded and the Commission had viewed as irrelevant, any evidence on the effect which the ouster of the existing station might have on the audience currently receiving the signal of the existing station. Here, when the application indicated the possibility of interference, Albertson was made a party to the proceedings, and specific· issues were designated for hearing. There is no suggestion that the intervenor, Jet Broadcasting Company, failed to sustain the burden of proof on these issues, imposed pursuant to Section 309(b) of the Act.[2] There is no indication of record that Albertson sought to enlarge the issues in any respect or to make them more specific in any particular relied upon. It is clear that he was accorded that "reasonable opportunity," required by the statute,[3] "to show cause by public hearing * * * why such order of modification should not issue." [4] Albertson was free to show whatever "cause" might exist in opposition to the proposed modification, and to any extent he may have failed in this respect, he has no basis for complaint here.

He must realize this is so, for he first argues that the Commission was not justified in concluding that need for the proposed service outweighs the need for service from WBNY in the interference area, pursuant to Commission Rules.[5]

Recitation of all aspects of the Commission's findings and conclusions is deemed unnecessary. It is sufficient for us to observe that the Commission took into account both quantitative and qualitative factors to predicate its conclusion that its "need" test had been met. WJET will provide a third nighttime primary service. It is an independent station. It offers a local outlet for community expression during evening hours, with programs such as "High School on Parade" with participation by students of different high schools; "Orchestra Hall," in cooperation with the Erie Philharmonic; and "Piano Magic" displaying young talents at the piano under the sponsorship of a music teachers' association. Its public service programs contemplate, as opportunity may afford, public speeches, rallies, concerts, sports events and meetings of civic appeal in Erie. The Commission might have concluded that its decision made for a more efficient use of the 1400 kc frequency where the new nighttime service is to be brought to some 135,927 people. The Commission might have concluded that there was a need for a choice of stations, particularly where there will be no nighttime interference to WBNY and where the objectionable daytime interference to WBNY involved only 1.09% of a population of 866,318. The area of interference, the Commission noted, is served, 100%, by nine other stations, with some service from a tenth station. Without our interpolating further detail, it seems clearly deducible from the Commission's findings and conclusions, taken as a whole, that it fairly exercised its judgment as an expert body in deciding that the requirement of its Rules had been satisfied. It could reasonably con-

1. 1952, 91 U.S.App.D.C. 72, 202 F.2d 298.

2. 48 Stat. 1085, 47 U.S.C.A. § 309(b).

3. 47 U.S.C.A. § 316(a).

4. Federal Communications Comm. v. N. B. C., 1943, 319 U.S. 239, 246, 63 S.Ct. 1035, 87 L.Ed. 1374.

5. 47 C.F.R. § 3.24 and 47 C.F.R. § 3.28 (c) (Supp.1954).

clude, upon the basis of substantial support in the record, that the loss of daytime service because of interference is negligible, particularly since the programs rendered by both WJET and WBNY are similar, consisting of records with occasional news and sports programs, a field of service supplied by other stations.

Accordingly, said the Commission: "These factors make a *prima facie* showing that the proposed service would outweigh the need for service to be lost and there was no evidence in rebuttal which would contradict or weaken such showing. Furthermore, we cannot conclude, from the type of public service programs now rendered by Station WBNY, that some of the ten other stations serving the area to be lost by Station WBNY would not broadcast similar programs or that the programs are so unusual that they cannot be broadcast by the other stations. A denial of the application on this ground is therefore unwarranted." [6] We will not say that the Commission erred on this aspect of the case.

Albertson insists to us that the Commission erred in failing to rule with sufficient specificity on his exceptions to the Initial Decision. Dealing generally with respect thereto, the Commission, in its Preliminary Statement, said:

"The Commission has carefully considered the exceptions to the Initial Decision. Those which are granted, in whole or in part, are reflected in our decision herein; the other exceptions or portions of exceptions not so granted, are denied either for the reasons set forth in the Decision, or as contrary to the record and not supported thereby; as adequately reflected by the Decision; as being immaterial and irrelevant and having no decisional significance; or as not in conformity with the Commission's rules."

■ Albertson here, for the first time, attacks the form of the Commission's treatment of his exceptions. He sought no rehearing based upon his claim of lack of specificity. We are of the view that he was bound to give the Commission an opportunity to pass upon his claims. Section 405 of the Act [7] provides in pertinent part:

"After a decision, order, or requirement has been made by the Commission in any proceeding, and [*sic*] party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for rehearing * * *. The filing of a petition for rehearing shall not be a condition precedent to judicial review of any such decision, order, or requirement, *except where the party seeking such review * * (2) relies on questions of fact or law upon which the Commission has been afforded no opportunity to pass * * *.*" (Emphasis supplied.)

We are satisfied that Albertson was bound to complain to the Commission concerning its alleged failure to rule specifically upon each of his exceptions to the Examiner's Initial Decision. Instead of doing so, after the Commission's Final Decision had been issued, he immediately sought judicial review.

---

6. We understand the Commission to be saying no more than the simple fact that "there was no evidence in rebuttal which would contradict or weaken" the "showing that a need exists" as found by the Commission, in accordance with its Rule, 47 C.F.R. § 3.28(c). Whether WBNY had opposed the application, or not, the Rule required a "showing." Conversely, WBNY was entitled to its "reasonable opportunity to show cause." Federal Communications Comm. v. WJR, 1949, 337 U.S. 265, 282, 69 S.Ct. 1097, 93 L.Ed. 1353.

7. Communications Act of 1934, 48 Stat. 1095, as amended, 47 U.S.C.A. § 405; and see O'Neill Broadcasting Company v. United States and Federal Communications Commission, 1956, 100 U.S.App.D.C. ——, 241 F.2d 443; cf. Seaboard & Western Airlines, Inc. v. Civil Aeronautics Board, 1950, 87 U.S.App.D.C. 78, 183 F.2d 975.

212

In Unemployment Compensation Comm. v. Aragon [8] Chief Justice Vinson wrote:

> "The responsibility of applying the statutory provisions to the facts of the particular case was given in the first instance to the Commission. A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action."

While we were dealing with a different factual situation in Red River Broadcasting Co. v. Federal C. Commission,[9] we made it clear that when remedies available to an appellant are spelled out in the statutes and the rules, there is no excuse for a failure to pursue them. "To hold otherwise would be in effect to substitute the determination of the court for the determination which Congress intended should be made by the Commission." (Citing cases).[10]

Section 10 of the Administrative Procedure Act [11] affords the appellant no comfort. In subsection (c) thereof, it is expressly provided that agency action otherwise final, shall be final, whether or not there has been presented any application for any form of reconsideration, *"except as otherwise expressly required by statute * * *."* (Emphasis supplied.) Section 405 supplies the command.

 Considered broadly, we might be able to say, were we bound to do so, that the Commission's findings, as a whole, sustain its Decision that the new service was justified in the public interest. It is sufficient that the determination finds substantial support on the record as made, and lies within the competence of the agency entrusted with the administration of the Act.[12]

The Commission's order is affirmed.

---

8. 1946, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136.

9. 1938, 69 App.D.C. 1, 6, 98 F.2d 282, 287, certiorari denied 1938, 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400; cf. F. P. C. v. Colorado Interstate Gas Co., 1955, 348 U.S. 492, 500–501, 75 S.Ct. 467, 99 L.Ed. 583.

10. See also Democrat Printing Company v. Federal Communications Commission, 1952, 91 U.S.App.D.C. 72, 78, 202 F. 2d 298, 303–304; United States v. L. A. Tucker Truck Lines, 1952, 344 U.S. 33, 37, 73 S.Ct. 67, 97 L.Ed. 54; National Labor Relations Board v. Cheney Cal. Lumber Co., 1946, 327 U.S. 385, 389, 66 S.Ct. 553, 90 L.Ed. 739; cf. Tampa Times Co. v. Federal Communications Commission, .1956, 97 U.S.App.D.C. 256, 259, 230 F.2d 224, 227.

11. 60 Stat. 243 (1946), 5 U.S.C.A. § 1009 (c).

12. Federal Communications Comm. v. Pottsville Broadcasting Co., 1940, 309 U.S. 134, 144, 60 S.Ct. 437, 84 L.Ed. 656; cf. Lake Central Airlines v. Civil Aeronautics Board, 1956, 99 U.S.App.D.C. 226, 239 F.2d 46.