**SIMPLICITY PATTERN CO., Inc., a corporation, Petitioner,**

v.

**FEDERAL TRADE COMMISSION, Respondent.**

**No. 13884.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 17, 1958.

Decided May 29, 1958.

Certiorari Granted Nov. 24, 1958. See 79 S.Ct. 223.

---

2. Panama Canal Co. v. Grace Line, 78 S. Ct. 752, 758.

Mr. William Simon, Washington, D. C., for petitioner. Mr. Harold F. Baker, Washington, D. C., also entered an appearance for petitioner.

Mr. Alvin L. Berman, Atty., Federal Trade Commission, with whom Mr. James E. Corkey, Asst. Gen. Counsel, Federal Trade Commission, was on the brief, for respondent.

Before WASHINGTON, DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

Simplicity Pattern Co., Inc., petitioner herein, is engaged in the manufacture and sale of patterns widely purchased by women customers intent upon making their own garments. The case does not involve Simplicity's competitors in the pattern field, but discrimination favoring one group of customers by the furnishing of facilities not made available to other customers on proportionally equal terms. Simplicity asks us to review and set aside the Commission's order of March 13, 1957, that petitioner cease and desist from:

"Contracting to furnish or furnishing to any of respondent's customers counter catalogs, cabinets or other equipment or facilities connected with the handling, sale or offering for sale of respondent's patterns, unless such catalogs, cabinets or other equipment or facilities are available on proportionally equal terms to all customers competing with such favored customers in the sale of respondent's patterns."

The Commission's complaint had contained two counts, Count I brought under § 5 of the Federal Trade Commission Act[1] charging that petitioner had extended to larger customers, certain chain stores (hereinafter sometimes referred to as "Red Fronts"), a "standing debit" under which such customers did not pay for their initial inventory of stock, a short term contract, and prepaid transportation. Such bases for doing business had not been extended to smaller customers, particularly certain retailers (hereinafter sometimes referred to as "fabric stores"). Concluding that the record lacked substantial evidence to warrant a finding of injury to competition, the examiner dismissed Count I. Counsel supporting the complaint appealed, but the Commission affirmed, concluding that adverse competitive effect upon Simplicity's competitors or among its customers had not been established. Count I, thus, is not before us.

Count II alleged violation of subsection 2(e) of the Clayton Act, as amended,[2] in that the petitioner had supplied

1. 52 Stat. 111 (1938), 15 U.S.C.A. § 45 (1952).

2. 38 Stat. 730 (1914), as amended by the Robinson-Patman Act, 49 Stat. 1526

to its larger customers, the Red Fronts, free monthly counter catalogues and certain storage cabinets, while the small customers such as the fabric shops had been required to pay for the same or similar items. The examiner concluded that the practices denounced in Count II violate § 2(e). Simplicity appealed, but the Commission affirmed, adopting the findings, conclusions and the order contained in the initial decision.

The Commission's opinion recited Simplicity's contention that there is no meaningful competition between the larger stores, the "Red Fronts," and the smaller independents, the "fabric shops," since the Red Fronts sell patterns for a profit while the fabric shops do not intend to make a profit. Rather they sell Simplicity's patterns as a necessary incident to their sale of fabrics. The opinion then runs on:

> "* * * Considering the circumstances appearing in the record, this argument is not wholly without merit, but we agree with the examiner's conclusion that the two kinds of stores are in competition in the sale of respondent's patterns. An element of rivalry exists in spite of the fact that the fabric shops sell the product primarily as an accommodation. It appears that they may not profit dollarwise in the sale of patterns alone, but they recognize the value of such business for attracting customers who may purchase other goods. The two kinds of stores are vying for the same particular markets whatever their motives may be. In our opinion this sufficiently discloses the presence of competition between them.
>
> "[Simplicity] * * * asserts, in addition, that the cabinets have no real relationship, as the statute pro-

vides, to the 'handling, sale, or offering for sale of such' patterns, and that dress patterns are not a commodity within the meaning of Section 2(e). There appears to be no merit in either of these contentions or various other arguments made by [Simplicity], and each is rejected."

The Commission confirmed the examiner's conclusions. His findings, so far as pertinent to our review, we now paraphrase.

Simplicity, a New York corporation, is one of the largest manufacturers and distributors of dress patterns, with sales extending throughout the United States. Its patterns are sold to all customers, Red Fronts and fabric stores alike, at 60% of the labeled retail prices of 25¢, 35¢ and 50¢, and both groups of stores retail at those labeled prices.

Simplicity supplied to the Red Fronts, *free of charge*, monthly counter catalogues which depict Simplicity's patterns and are essential to the retail sale of patterns. Fabric stores were required to pay for such catalogues a price of $1.65 to $2 each, depending upon the binding.

Simplicity furnished to the Red Fronts, *free of charge*, cabinets and other equipment while fabric stores were required to purchase or rent such equipment.

Red Fronts merchandised the patterns as they do any other item, and unless the patterns can show a profit, the Red Fronts will not handle them. A prospective retail purchaser may examine a catalogue in a small space on the counter beneath which, in a cabinet, the patterns are stored. On the other hand, the fabric stores usually made no profit on the sale of patterns and did not expect to do so. The fabric stores handled the patterns to promote the sale of fabrics and because the customers expected this serv-

(1936), 15 U.S.C.A. § 13(e) (1952). The subsection in pertinent part here said to be applicable reads:

"It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale * *

by * * * furnishing * * * any services or facilities connected with the * * * sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms."

ice. "The patterns, catalog, fashion previews and other advertising material are prominently displayed and the customer is invited to sit and browse through the material, all in order to promote fabric sales," the examiner found.

He concluded, despite the differences in sales methods, that the two groups of stores compete in the sale of patterns. "It is difficult to say that two stores in the same shopping area, possibly side by side, are not in competition when they are selling the same article at the same price to essentially the same segment of the public * * *."

" * * * The catalogs supplied the two groups of stores are identical. While the cabinets differ materially in design and appearance, the fact remains that they serve essentially the same purpose—as a storage place for the patterns pending their sale to the public.

*"True, there is no showing of competitive injury.* But this, as the examiner, understands, is not required in a proceeding under Section 2(e). Given the element of jurisdiction, it appears that a prima facie case is established when it is shown that a seller is supplying to one customer facilities for use in the resale of the seller's products, and not supplying such facilities to the competitor of the favored customer on proportionally equal terms. *In short, Section 2(e) appears to be a per se statute,* requiring no proof of competitive injury." [3] (Emphasis supplied.)

## Part I

■ We agree that, for the purpose of establishing a prima facie case, there was discrimination favoring the Red Fronts, since there is substantial support in the record as a whole that Simplicity furnished to them catalogues and cabinets free of charge while the fabric shops were required to buy or rent the identical or similar facilities.

"Petitioners thus furnished a service connected with the sale or offering for sale of a commodity upon terms not accorded to other purchasers. * * * *It is enough if the discrimination be made in favor of one who is a purchaser and denied to another purchaser or other purchasers of the commodity.*" [4] (Emphasis supplied.)

We agree that the Red Fronts and the fabric stores, operating in the same cities and in the same shopping area, often side by side, were competitors, purchasing from Simplicity at the same price and then at like prices retailing the identical product to substantially the same segment of the public.[5] Simplicity would have us say, despite such facts, there was no competition here. It points to the Commission's observation, supra, that its argument "was not wholly without merit." Simplicity contends the Red Fronts must sell patterns at a profit while the fabric stores seek none from their sale of patterns. Their profit comes from the sale of fabrics, and they merchandise the patterns simply as a matter of service and for customer convenience. We have no doubt a pattern purchaser in

3. As to Count I, the examiner had noted, "The record seems clearly to be without any substantial evidence warranting a finding of injury to competition," as between the Red Fronts and the fabric stores. The Government had already conceded before the examiner that no competitive injury had been shown as to pattern manufacturers competing with Simplicity. As to Count II, we will demonstrate first our agreement that a prima facie case was made out. But the Examiner's understanding of the effect of such proof failed to give effect to Section 2(b), the first clause of which, applicable here,

expressly permits proof of "justification," infra, Part II.

4. Corn Products Refining Co. v. Federal Trade Commission, 1945, 324 U.S. 726, 744, 65 S.Ct. 961, 970, 89 L.Ed. 1320.

5. Elizabeth Arden, Inc., v. Federal Trade Commission, 2 Cir., 1946, 156 F.2d 132, certiorari denied 1947, 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed. 1828; Elizabeth Arden Sales Corporation v. Gus Blass Co., 8 Cir., 1945, 150 F.2d 988, 161 A.L.R. 370, certiorari denied 1945, 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467.

a Red Front may there purchase needles, thread, thimbles, shears, tape measures and what not, each item yielding its mark-up to supplement the profit derived from the pattern sale. But both groups of stores were selling patterns. Simplicity chose to pioneer sales through Red Fronts. It decided it was good business to provide, free of charge, catalogues and cabinets which facilitate pattern sales in Red Front pattern stores. Fabric stores, however, not only are not shown to have been accorded like facilities on proportionately equal terms but to be required to bear a very considerable expense, either to buy or rent comparable facilities. We may assume that had the facilities been available to the fabric stores on "proportionally" equal terms, there could be no discrimination within the meaning of the section. Section 2 (e), as invoked here, subject to § 2(b) to which we will soon refer, simply proscribes as unlawful the discrimination here complained of. It says nothing about the methods to be employed in the resale of the commodity. It is silent as to the motives which actuate the "purchaser" in his handling of the product involved. But both groups sold the same article to the same type of buyer in the same shopping area. We have no doubt they are thus competitors, but whether or no, as "purchasers" from Simplicity, they come within § 2(e) in the context here applied.

▮ We agree that there was no showing of competitive injury, and that no such proof was required[6] to establish a prima facie case. Injury to competition is not suggested as an element of a § 2(e) violation. Even though absence of competitive injury was here found, that fact is immaterial to the point we here discuss. Section 2(e) was written for the promotion of fair dealing among the customers of a seller. It was intended to protect purchasers against such discrimination as might arise from unequal and *unjustified* furnishing of services or facilities to be employed in marketing the seller's goods. It would seem obvious, we might say in passing, regardless of a lack of competitive injury, Red Fronts for each $1,000 of sales received a mark-up of $400, while fabric stores received per $1,000 of sales, $400 less the cost of cabinets and catalogues. Competitive *opportunities* might at least seem disparate.[7]

▮ Thus, without more, on the facts so far treated, a "prima-facie case" within the meaning of § 2(b) may be made out which comes squarely within the interdiction of § 2(e). But Congress has said, in effect, having in mind the purposes of the Robinson-Patman Act, there may be discrimination such as has been discussed—*unless justification can be shown*. Congress has not enacted § 2(e) in isolation—the interdiction does not stand alone. Accordingly, while a prima facie § 2(e) case may be developed even without a showing of competitive injury, Congress clearly contemplated situations might arise for which justification may exist. It specifically provided for such an exigency in § 2(b) which, in pertinent part, reads:

"(b) Upon proof being made, at any hearing on a complaint under this section, that there has been discrimination in * * * facilities furnished, the burden of rebutting the prima-facie case thus made by showing justification shall be upon the person charged with a violation of this section, and unless justification shall be affirmatively shown, the Commission is authorized to is-

---

6. "The statute is aimed at discrimination by supplying facilities or services to a purchaser not accorded to others. * *." Corn Products Refining Co. v. Federal Trade Commission, supra note 4; Corn Products Refining Co. v. Federal Trade Commission, 7 Cir., 1944, 144 F.2d 211, 219; Elizabeth Arden, Inc., v. Federal Trade Commission, supra note 5, 156 F. 2d at page 135.

7. Cf. Federal Trade Commission v. Morton Salt Co., 1948, 334 U.S. 37, 46, 68 S.Ct. 822, 92 L.Ed. 1196, a § 2(a) case to be sure, which nevertheless reflects the spirit of the legislation.

sue an order terminating the discrimination: *Provided, however,* That nothing [herein] contained \* \* \* shall prevent a seller rebutting the prima-facie case thus made by showing that his \* \* \* furnishing of \* \* \* facilities to any purchaser or purchasers was made in good faith to meet \* \* \* the \* \* \* facilities furnished by a competitor."

We see from the first clause that when a prima facie case has been made of discrimination attributable to the *furnishing of facilities,* an order terminating the discrimination may be issued "unless justification shall be affirmatively shown" by the seller. Whether *customers* or *competitors* are involved as to the first portion of § 2(b), clearly that justification must be a *legal* justification, one which dispels that unlawfulness which the purpose of the Act and the public interest require to be suppressed. Then, it is further spelled out in the proviso that if a *competitor* shall *lawfully* furnish facilities, a seller may rebut a charge of discrimination by showing he has furnished facilities in a good faith effort to provide like facilities. This must be so, for neither the Commission nor the courts could countenance the unlawful furnishing of facilities by one charged under § 2(e) in order to meet like *unlawful* conduct of a competitor.[8] Section 2(b), then, provides for rebuttal of a prima facie case of discrimination when charged to have been practiced among a seller's *customers,* as in a § 2(e) case, and in special circumstances as noted, where the seller's *competitors* are involved. While a complete § 2(e) case may be made out which, without more and unrebutted, constitutes a "per se"

case, as the examiner put it, the alleged violator under § 2(b) may go forward and establish "justification." If he affirmatively sustains his burden, there no longer is unlawful discrimination.

## Part II

Here Simplicity sought and procured a ruling that no evidence of "cost justification" could have any effect on the examiner. The latter had already concluded, in effect, that the per se violation, established as he found, was impervious to any such defense. He thus reflected the position of the Commission as put in its brief, that "Congress has already determined that the practice covered by Section 2(e) has the tendency and capacity to injure competition, and injury to competition is not a matter to be litigated in any particular case, either as a part of the case in chief, or as a matter of rebuttal."[9] In effect we are told, if "discrimination" arises under § 2(e), a finding of violation automatically must follow. We are at a loss to reconcile this claim with the provisions of § 2(b) expressly outlining the procedures which permit rebuttal by way of "justification" and establish the burden of proof. Indeed, the Commission actually argues to us in its brief that the rebuttal proviso of § 2(b) authorizing a good faith meeting of facilities, furnished by a competitor is "obviously" the "matter of rebuttal which is referred to in the first portion of Section 2(b)." The Commission would have us eliminate the first clause, and, in effect, would thus read § 2(b) out of the case. We find this position to be completely erroneous for the reasons we have suggested. The error undoubtedly underlay the examiner's conclusion as to the preclusive status

8. Cf. Elizabeth Arden Sales Corporation v. Gus Blass Co., supra note 5, 150 F. 2d at pages 995, 996. The proviso portion of § 2(b) is not here involved, it may be observed in passing.

9. The Commission relies upon § 2(c) cases which have no bearing whatever upon our problem. Sec. 2(b) specifically provides for rebuttal by way of justification where the alleged discrimination among *customers* arises from the furnishing of facilities. No such provision is related to § 2(c) violations. Cf. Oliver Bros. v. Federal Trade Commission, 4 Cir., 1939, 102 F.2d 763; Webb-Crawford Co. v. Federal Trade Commission, 5 Cir., 1940, 109 F.2d 268, certiorari denied 1940, 310 U.S. 638, 60 S.Ct. 1080, 84 L. Ed. 1406.

he ascribed to the "per se" case which in truth was no more than the prima facie case under § 2(e) to which the pertinent portions of § 2(b), as a whole, were expressly related.

The Commission has asked that we not consider this clear error on the ground that the point had not been saved of record. Had Simplicity not raised the "cost justification" issue, we agree we would be so precluded and we have repeatedly so held.[10]

From the very outset, and persistently asserted throughout the proceedings, was Simplicity's claim that "cost justification" was available as a defense. The point was not only briefed and argued by both sides, but was passed upon by the Commission. Petitioner's answer to the original complaint, in pertinent part read:

"Respondent denies that the value of any service or facility furnished to any one customer or group of customers and not furnished to other customers exceeds the difference in the costs of manufacture, sale, or delivery resulting from the differing methods or quantities in which such products are sold, distributed, or delivered to such respective customers."

Following oral argument on Simplicity's motion to dismiss which the examiner granted as to Count I and denied as to Count II, he set a conference for the simplication of issues. The transcript of proceedings then held, made part of the record, showed an announcement by the examiner that "my views are definite and my thought at the present time is that cost justification in a case of his kind in not available as a defense." An excerpted colloquy is revealing.[11] We are satisfied that the point is properly before us.[12]

The Act has not defined "justification," as used in § 2(b), where, as we have observed, the first clause permits justification to be "affirmatively shown"

10. See, e. g., Barclay Home Products, Inc., v. Federal Trade Commission, 1957, 100 U.S.App.D.C. 46, 241 F.2d 451, certiorari denied 1957, 354 U.S. 942, 77 S. Ct. 1399, 1 L.Ed.2d 1537; Albertson v. Federal Communications Commission, 1957, 100 U.S.App.D.C. 103, 106, 243 F.2d 209, 212, and cases cited in both.

11. "Mr. Simon: Judge, do I understand that if evidence were offered and Mr. Smith would not object and it would be received in evidence on cost justification, that you would still not hold it was a defense to an answer under 2(e)?

"Hearing Examiner Pack: Yes, sir. That is correct. I don't understand that the failure to object would affect the law in any way and if the evidence should be received, and if I should continue to entertain the views which I now hold, it seems to me the evidence would simply have to be disregarded in the decision of the case. I do not understand that reception of the evidence into the record, even without objection, would make any difference insofar as the law is concerned.

"Mr. Simon: For the purpose of this record, Judge, may the record show that you would hold that it was not a defense to an action under 2(e)?

"Hearing Examiner Pack: Yes, sir."

12. Of course a proffer ordinarily is contemplated by the Commission's rules, 16 C.F.R. 3.15(c) (3) (Supp.1956). Here, where the examiner and the Commission itself had equated the establishment of a prima facie case with a conclusive determination of violation, it would seem to have been futile to have taken the time and to have incurred the expense of establishing cost justification where the point was deemed foreclosed. In any event, briefed and argued as it was, the point was fully before the Commission and the purpose of the rule was met. If it could be said under the circumstances that there was a failure of compliance with the rule, the Commission seems to have waived it. Its opinion recites:

"Respondent argues principally that 2 (e) should be read in conjunction with other subsections of Section 2 so as to permit the introduction of evidence relating to cost justification which is provided for in 2(a). We cannot concur in this argument. 'Congress validly made the decision that conduct coming within the more definite standard of (e) was unlawful. We see no reason why the limitations contained in (a), or their equivalent, should be read into (e).' Elizabeth Arden, Inc., v. Federal Trade Commission [2 Cir.], 156 F.2d 132."

when the discrimination charged involves, as here, the furnishing of facilities to *customers*. We do not agree with petitioner that such justification reaches so far as to import § 2(a) criteria as matters of defense to a Section 2(e) charge. Section 2(a) makes no reference whatever to "services or facilities furnished."

Conversely, it seems equally clear that the "proportionally equal terms" reference in § 2(e) is not a complete answer, for there *could* be no discrimination, having in mind the purposes of the Act, if all buyers of goods for resale may obtain services or facilities connected therewith on "proportionally equal terms." We understand Simplicity to be entitled to undertake to prove in terms of its costs of sale and delivery as related to the differing methods of sale and distribution by the two groups that the facilities were so provided, with § 2 (e) in mind, that "cost justification" under the circumstances here may affirmatively be shown in order to dispel the charge of unlawful discrimination. In short, we look to § 2(b) as affording two separate and distinct grounds upon which "justification" may rest, one, such as was considered in Elizabeth Arden, Inc., v. Federal Trade Commission, supra note 5, arising under the § 2(b) *proviso*, and

another such as may be developed here under the first clause of § 2(b). In the § 2(b) proviso situation presented in the Elizabeth Arden case, the court's recital noted at page 133 of 156 F.2d that the seller was out "to beat and not to meet" its competitors. Here no competitors are involved, but only a claim of discrimination as between the two classes of customers. Congress certainly never wrote § 2(b) with its varying facets only to have the entire section conditioned to situations arising under the proviso. Congress, we think, must have intended that the justification to be shown under the first clause of § 2(b) as to a § 2(e) charge of discrimination in "facilities furnished" to various *customers,* was to depend upon the facts in a particular case. That the term may include a "cost justification" which Simplicity desired to establish seems clear enough.[13]

Here the catalogues were apparently identical. The cabinets, while designed to contain patterns for ready reference, were markedly different. The Red Fronts sold patterns at a counter space, some 14 by 14 inches, just large enough to place a catalogue on the counter. The patterns were stored in cabinets or boxes under the counter. But the fabric stores desired "rather expensive, well appearing, nice looking articles of furniture

13. Judge Burger has authorized me to note his conviction that Congress intended not to create an unrebuttable presumption but sought actually to prohibit only such discrimination as produced a competitive injury, and certainly never intended to bar discrimination which might have a beneficial effect as promoting sales by and among competitors. He points to two sources to demonstrate the basis for his more comprehensive view, viz.: (a) American Law Institute, Price Discrimination and Related Problems Under the Robinson-Patman Act (1953) at 114–115: "There seems to be little logic in making disproportionate but bona fide allowances or services to competing purchasers (which may not amount to a discrimination in price) create, in effect, a conclusive presumption of injurious effect upon competition, whereas the charge of different prices to competing purchasers is only prima facie evidence

of such injury"; (b) Report of the Attorney General's Nat'l Committee to Study the Antitrust Laws (1955) at 191–192: "[T]he Committee disapproves the present disparity in the statutory consequences which attach to economically equivalent business practices. * * * Antitrust enforcement should not be complicated by diverse legal consequences solely dependent on whether a discriminatory concession masquerades as * * * 'allowance', or 'service' rather than a naked quotation in price. For, as the Supreme Court has recognized, in any reasonable implementation of antitrust objectives 'the crucial fact is the impact of *the particular practice on competition,* not the label it carries.'" (Emphasis added.) Cf. Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 1949, 176 F.2d 1, certiorari denied 1950, 338 U.S. 948, 70 S.Ct. 486, 94 L. Ed. 584.

[which] compare probably to a fairly expensive filing cabinet in the office of a lawyer or businessman," the examiner noted. These, we take it, coincided with the fabric stores' management's desire to exploit their sale of fabrics. Their purchase of good looking furniture, a cabinet costing $150, "made to appear attractive," might well be related to the creation of a business environment conducive to ultimate sales of the goods on which their profit depended.[14] Simplicity had some 6,000 customers who purchased patterns in an amount less than $400 per year and who were serviced at a loss. Overall, 82% of Simplicity's 12,300 customers, as fabric stores, accounted for only 30% of its total dollar volume of sales, while Red Fronts operated some 3,200 separate outlets. One of the six witnesses had pattern sales of $178 per year. The cost of catalogues and cabinets may have seemed of scant moment to fabric store operators who obtained their real profit from fabric sales. As the examiner said: "They emphasize that they handle patterns only to sell fabrics and because their customers expect the service. None of these witnesses regards the competition of the 10¢ stores in the sale of patterns as of any real consequence."

It seems clear that the examiner felt bound by his understanding that § 2(e) constituted a per se statute where violation automatically followed from proof that the furnishing of facilities to one group was discriminatory if another group, to serve its own ends, bought and paid for catalogues and cabinets. No evidence of "cost justification" for the different treatment, he said, could rebut his conclusion which the Commission seems to have shared. We are satisfied that the Act proscribes only such discrimination as is inimical to the public interest. If a cost justification can be shown which dispels the complaint of such discrimination, Simplicity is entitled under the first clause of § 2(b) to go forward with such proof.

Of course the burden of proof of justification rests upon Simplicity,[15] but § 2(b), "infelicitous language"[16] or not, certainly applies to a § 2(e), proceeding. Congress recognized that not *every* case of seeming discrimination is barred, just as § 2(f) "does not reach all cases of buyer receipt of a prohibited discrimination in prices."[17] In the Automatic Canteen case, the Court rejected the Commission's claims as to the effect of § 2(b), and observed that considerations of fairness and convenience must be regarded as controlling.[18] Perhaps it

14. Simplicity's brief before the Commission noted: "Display is an element in this effort and, generally, three or more superior quality pattern cabinets were prominently displayed. Uusually these were 4-drawer, all steel, cabinets with roller bearing drawers—somewhat like modern office filing cabinets—with simulated mahogany and light colored wood finishes." The record does not show whether or not these cabinets, apparently adapted to the orderly filing of various types of patterns, frequently changing, were purchased to satisfy the particular decor of the fabric store customer, nor whether or not Simplicity sold them at cost as a matter of service to fabric store customers. Simplicity insisted that it could not be expected "to furnish free cabinets, costing several hundred dollars, to a prospective smaller customer on whose business it could not expect to earn that profit during many years." It argued that such differences in treat-

ment as might exist "could well have been cost justified had the Examiner permitted Simplicity to do so."

15. Automatic Canteen Co. of America v. F. T. C., 1953, 346 U.S. 61, 77, 73 S.Ct. 1017, 97 L.Ed. 1454; Federal Trade Commission v. Morton Salt Co., 1948, 334 U.S. 37, 68 S.Ct. 822, 92 L.Ed. 1196.

16. Cf. Automatic Canteen Co. of America v. F. T. C., supra note 15, 346 U.S. at page 78, 73 S.Ct. at page 1026. The Court of Appeals had read the "apparently careful choice of language" as not "meaningless." See, idem, 7 Cir., 1952, 194 F.2d 433, 438 .

17. Id., 346 U.S. at page 71, 73 S.Ct. at page 1023.

18. 346 U.S. at page 78, 73 S.Ct. at page 1026; and see the Court's note 17, Id., 346 U.S. at page 75, 73 S.Ct. at page 1025, a reference to § 2(b) is to the procedural language preceding the pro-

is not without significance that the Commission had not here sought to make a § 2(f) case against the Red Fronts. Here, it will be remembered, the wholesale prices of the patterns to the two groups were identical, just as were the retail prices to the public. We are bound to conclude, as we see this record, that the seller's costs may have an important bearing on the business practices alleged to have been discriminatory.

Here the Commission as a practical fact would have us bar all evidence of cost justification, whatever it may be. We think the Court in its reading of the Act has pointed the way.[19] We conclude that Simplicity should be entitled, affirmatively within the meaning of § 2 (b), to demonstrate "cost justification." To that end it may offer such evidence as may establish the fact that *unlawful* discrimination in favor of one group as against another group of customers was

not worked in any of the ways comprehended within § 2(e).[20] We assume the Commission in its consideration of the problem will regard the purposes of the Act and the public interest criteria which should guide its thinking. To that end we set aside the Commission's order and remand this case.

WASHINGTON, Circuit Judge (dissenting).

The disposition of this case turns on the meaning to be given to Section 2(b) of the Clayton Act, as amended. That section permits one against whom a prima facie case is made to show "justification" for his conduct. But that expression is not left undefined. Far from being all-inconclusive, it in fact covers rather narrow ground. The "justification" referred to in Section 2(b) must be that described in the meeting-competition proviso to that section,[1] or such

viso," and discussion at 76 and 77, and at pages 1025 and 1026 respectively.

19. Essential fairness is the keynote, 346 U.S. at pages 78–81, 73 S.Ct. at pages 1026–1028.

20. Oral argument yielded no adequately explanatory answer to our question based upon a not entirely hypothetical case: can it be said as a matter of law that § 2(e) reaches as discriminatory, the rental or sale of vending machines to an industrial group which pays an appropriate charge therefor, while a drug store chain would refuse the machines even if furnished gratis? We took as illustrative an interstate purveyor of foodstuffs, coffee and soft drinks which are sold, wholesale, at identical prices per item, to industrial establishments, gasoline stations, on the one hand, and to a chain of drug stores on the other. The latter desires no vending machine clientele, it wants counter customers who while in the "drug" store, also may buy other goods, cameras, summer chairs, cutlery and what not. The profits from such sales make up for "loss leader" counter business, and the drug chain is free from the necessity of maintaining kitchens to prepare and trucks to distribute the foods and beverages. The industrial group wants to serve its patrons and to keep its employees on the job not leaving the premises for a

coffee break. The purveyor could not have met the costs of providing vending machines for the gas stations except for its large volume sales to the drug chain. The charges to the consuming public are the same in each case.

The purveyor is interested in selling its foodstuffs and beverages. Its costs in making available the vending machines, with whatever capital is locked up in the venture, are an expense involved in its doing business, in meeting the particular and peculiar demands of two types of customers for its goods, one group which desires a facility of a particular type, and another which will not have the facility under any circumstances. Both classes of customers, at prices both are willing to pay, purchase from the purveyor precisely what they want, the foods and beverages they desire to resell. We find ourselves unable to perceive that the "discrimination" has the slightest meaningful resemblance to the purposes of the Act or to any evils it was designed to prevent.

1. *"Provided, however,* That nothing [herein] * * * contained shall prevent a seller rebutting the prima-facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor."

justification as may be spelled out from the provisions of the particular section— other than Section 2(b)—creating the offense alleged. This premise is firmly grounded in the decisions.[2] No one claims that the proviso in Section 2(b) is applicable to the facts of the present case. Hence we look to Section 2(e), the section governing here, which contemplates as justification for a prima facie violation of that section a showing by the seller that all purchasers were accorded facilities on "proportionally equal" terms. To repeat: Congress provided only two defenses to charges against one engaged in commerce of conduct which prima facie violates Section 2(e): (1) under the proviso to Section 2(b) that the facilities were furnished in good faith to meet the facilities furnished by a competitor; or (2) within the language of Section 2(e) that in fact the facilities furnished were accorded to all purchasers on proportionally equal terms.

The Simplicity Company makes no contention that it has furnished cabinets and catalogs on proportionally equal terms to the Red Fronts and the fabric stores. Presumably if it afforded facilities on proportionally equal terms the Commission would not object. But Simplicity cannot refuse proportional equality and then argue that its refusal is justified by cost differentials—a defense available in a case brought under Section 2(a), but not in one brought under Section 2(e).

As a practical matter, "cost justification" in the present context can only mean that Simplicity may "justify" its actions by showing that many of its fabric store customers do not pay their bills, or are unprofitable to deal with because of small volume, or some similar reason. Such factors may explain Simplicity's desire to discriminate against them in favor of bigger and more profitable accounts, but I see no evidence that Congress has decreed that factors of that

sort shall be viewed as legal justification. Quite the contrary, as I see it. In fact, Section 2(e) of the Act becomes almost meaningless if such defenses are to be allowed to prevail.

I would therefore affirm the Commission's cease and desist order.

2. See Elizabeth Arden, Inc., v. Federal Trade Commission, 2 Cir., 1946, 156 F.2d 132, 135, certiorari denied 1947, 331 U.S. 806, 67 S.Ct. 1189, 91 L.Ed. 1828; Oliver Bros., Inc., v. Federal Trade Commis- sion, 4 Cir., 1939, 102 F.2d 763, 767; Great Atlantic & Pacific Tea Co. v. Federal Trade Commission, 3 Cir., 1939, 106 F.2d 667, 675–677, certiorari denied 1940, 308 U.S. 625, 60 S.Ct. 380, 84 L.Ed. 521.