468 F.2d 674
 SERVICE ELECTRIC CABLE TV, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, and WBRE-TV, INC., Scranton
Broadcasters, Inc., and Taft
Broadcasting Company, Intervenors.
 No. 71-1848.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 12, 1972.
Decided Oct. 13, 1972.
 
 Frederick W. Ford, Pittman, Lovett, Ford, Hennessey & White, Washington, D. C., Lee G. Lovett, Washington, D. C., for petitioner.
 Charles A. Zielinski, Federal Communications Commn., Washington, D. C., for respondents.
 Arthur B. Goodkind, Washington, D. C., Koteen & Burt, Washington, D. C., on brief for Intervenor Taft Broadcasting Co.
 Marvin J. Diamond, Hogan & Hartson, Washington, D. C., on brief for Intervenor WBRE-TV, Inc.
 Daniel W. Toohey, Dow, Lohnes & Albertson, Washington, D. C., on brief for Intervenor Scranton Broadcasters, Inc.
 Before VAN DUSEN, JAMES ROSEN and HUNTER, Circuit Judges.
 OPINION OF THE COURT
 HUNTER, Circuit Judge.
 
 
 1
 Petitioner Service Electric Cable TV, Inc. ("Service Electric") seeks review of an order of the Federal Communications Commission's Review Board ("Review Board"), 23 F.C.C.2d 468 (1970). Jurisdiction is conferred upon this Court by Section 402(a) of the Communications Act of 1934 ("Communications Act"), 47 U.S.C. Sec. 402(a), and 28 U.S.C. Secs. 2341-2343.
 
 
 2
 Service Electric operates CATV systems in the Pennsylvania cities of Wilkes-Barre, Hazleton and Mahanoy City. The three intervenors, Taft Broadcasting Company, Inc. ("Taft"), Scranton Broadcasting, Inc., and WBRE-TV, Inc., are all licensees of commercial UHF television stations in the Scranton-Wilkes-Barre area.
 
 
 3
 The present controversy arises out of a distant signal CATV rule promulgated by the Federal Communications Commission ("Commission") in 1966. Second Report and Order, 2 F.C.C.2d 725 (1966); 47 C.F.R. Sec. 74.1107. In short, the distant signal policy forbids the importation of non-local television signals (beyond the Grade B contour of that station) into the top 100 television markets unless a showing is made, in a hearing, that such action would be consistent with the public interest. 47 C. F.R. Sec. 74.1107(a).[1] However, no hearing is required as to distant signals which were being "supplied" to subscribers prior to February 15, 1966, the so-called "grandfather" date. 47 C.F.R. Sec. 74.1107(d).[2]
 
 
 4
 In its decision below, the Review Board held that petitioners had failed to show that its CATV systems were supplying certain Philadelphia UHF signals to their subscribers before February 15, 1966. As a result, Service Electric was found not entitled to carry these signals, and their carriage was ordered discontinued. Service Electric has since made various appeals to the Review Board for reconsideration and for reopening the record and to the Commission for review and for a declaratory order, all of which have failed. The Commission has allowed Service Electric to continue to carry the disputed signals through all stages of the proceedings below and until final resolution by this Court.
 
 
 5
 Service Electric's initial claim before us is that the Review Board's decision has not been made effective. After Service Electric's petitions for reconsideration and reopening were turned down by the Review Board, Service Electric filed a petition for review which was denied by the Commission without a specification of reasons, a procedure authorized by Section 5(d)(5) of the Communications Act, 47 U.S.C. Sec. 155(d)(5).[3] The only issue, then, is whether Section 1.102(a)(3) of the Commission's rules, 47 C.F.R. Sec. 1.102(a)(3), operates to reinstate the Board's decision which was stayed under the facts of this case. Section 1.102(a)(3) provides:
 
 
 6
 "If an application for review of such final decision is filed . . . the effect of the decision is stayed until the Commission's review of the proceeding has been completed."
 
 
 7
 Petitioner's position is that since the Commission denied its application for review, no review was started and thus none was "completed." We disagree. The review which is required by Section 1.102(a)(3) is simply the process by which the Commission considers a petition for review. This process is completed when the Commission acts on a petition, without regard as to whether the Commission states the reasons for its action. To find otherwise would render Section 5(d)(5) of the Communications Act meaningless, since a statement of reasons would always be required to make a Review Board decision effective.
 
 
 8
 Petitioner's second argument before this Court is that the Review Board erred in finding that Service Electric did not meet its burden of proof with respect to the signals it claimed were "grandfathered." We have examined the evidence before the Board and find no merit in this contention. On the contrary, there is substantial evidence on the record as a whole to support the Board's conclusion, and therefore we have no authority to interfere with its finding. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).
 
 
 9
 Petitioner asserts, however, that the Board did not consider all of the relevant evidence relied upon by Service Electric to meet its burden of proof. Specifically, petitioner refers to eleven corroborating affidavits which it contends should have controlled the Commission's final decision. These affidavits were part of fourteen affidavits attached to Taft Exhibit #6 which was offered to the Review Board by intervenor Taft for the purpose of impeaching the credibility of certain Service Electric witnesses. The affidavits were not introduced into evidence by Service Electric as an affirmative part of its case, nor did it ever attempt to use them as such until now. In fact, Service Electric never explicitly asked either the Review Board or the Commission to deal with these affidavits at all.
 
 
 10
 Section 405 of the Communications Act, 47 U.S.C. Sec. 405, provides in pertinent part:
 
 
 11
 "After an order, decision, report or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission . . . any party thereto . . . may petition for rehearing. . . . The filing of a petition for rehearing shall not be a condition precedent to judicial review of any such order, decision, report or action, except where the party seeking such review . . . (2) relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass." (Emphasis supplied.)
 
 
 12
 We are satisfied that the Commission never had an opportunity to pass upon petitioner's present claim that the affidavits should be viewed as affirmative evidence in its behalf. As a result, Service Electric was obligated to file a petition for rehearing if it wanted its affidavits argument considered. Having failed to do so, petitioner cannot now come forward and ask this Court to usurp the Commission's function. Hansen v. F. C. C., 134 U.S.App.D.C. 100, 413 F.2d 374, 376 (1969). See Great Falls Community TV Cable Co. v. F. C. C., 416 F.2d 238, 239 (9th Cir. 1969); Presque Isle TV Co. v. United States, 387 F.2d 502, 505 (1st Cir. 1967); Albertson v. F. C. C., 100 U.S.App.D.C. 103, 243 F.2d 209, 211 (1957).
 
 
 13
 Finally, we need not decide whether the Commission and Review Board applied an improper standard in determining whether the disputed UHF signals were "grandfathered" under 47 C.F.R. Sec. 74.1107(d). Petitioner contends that the Commission and Review Board used a "sufficiency of carriage" test when in fact all that the rule requires is that grandfathering signals were being supplied to customers on February 15, 1966. Petitioner's argument fails under either standard, however, since there is no finding by the Review Board that any of the disputed UHF signals were carried by Service Electric on that date.
 
 
 14
 The order of the Review Board will be affirmed.
 
 
 
 [1]
 47 C.F.R. Sec. 74.1107(a) provides in pertinent part:
 "No CATV system operating in a community within the predicted Grade A contour of a television broadcast station in the 100 largest television markets shall extend the signal of a television broadcast station beyond the Grade B contour of that station, except upon a showing approved by the Commission that such extension would be consistent with the public interest, and specifically the establishment and healthy maintenance of television broadcast service in the area."
 
 
 [2]
 47 C.F.R. Sec. 74.1107(d) provides in pertinent part:
 "The provisions of paragraph (a) and (b) of this section shall not be applicable to any signals which were being supplied by a CATV system to its subscribers in a community on February 15, 1966. . . ."
 
 
 [3]
 Section 5(d)(5) of the Communications Act provides in pertinent part:
 "In passing upon applications for review, the Commission may grant, in whole or in part, or deny such applications without specifying any reasons therefor."