265 F.2d 353
 FRONTIER BROADCASTING COMPANY, Petitioner,
v.
UNITED STATES of America, Federal Communications Commission, Respondents,
Western Nebraska Television, Inc., Intervenor.
FRONTIER BROADCASTING COMPANY, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Western Nebraska Television, Inc., Intervenor.
 No. 14395.
 No. 14539.
 United States Court of Appeals District of Columbia Circuit.
 Argued February 4, 1959.
 Decided March 12, 1959.
 
 Mr. Alan Y. Naftalin, Washington, D. C., with whom Mr. Bernard Koteen, Washington, D. C., was on the brief, for petitioner in No. 14,395 and appellant in No. 14,539.
 Mr. Joel Rosenbloom, Counsel, Federal Communications Commission, for Federal Communications Commission, respondent in No. 14,395 and appellee in No. 14,539. Messrs. John L. Fitzgerald, Gen. Counsel, Federal Communications Commission, Richard A. Solomon, Asst. Gen. Counsel, Federal Communications Commission at the time the brief was filed, John J. O'Malley, Jr., and Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, and Mr. Daniel M. Friedman, Atty., Dept. of Justice, were on the brief for respondents in No. 14,395 and appellee in No. 14,539. Mr. Charles C. McCarter, Counsel, Federal Communications Commission, also entered an appearance for appellee in No. 14,539.
 Mr. Neville Miller, Washington, D. C., with whom Mr. John P. Bankson, Jr., Washington, D. C., was on the brief, for intervenor.
 Before Mr. Justice BURTON, retired,* and WILBUR K. MILLER and FAHY, Circuit Judges.
 WILBUR K. MILLER, Circuit Judge.
 
 
 1
 The Frontier Broadcasting Company, licensee of a television station at Scottsbluff, Nebraska, operating on Channel 10, applied to the Federal Communications Commission for a television construction permit for Channel 13 at Alliance, Nebraska, some 40 miles away. Western Nebraska Television, Inc., applied for a similar permit. The Commission designated the two mutually exclusive applications for a comparative hearing, finally fixed to begin October 1, 1957, which would include an issue as to Western Nebraska's financial qualifications.[1]
 
 
 2
 Early in September, 1957, Frontier asked the Commission's permission to enlarge its facilities at Scottsbluff so as to more nearly cover the Alliance area and stated that, if such permission were granted, it would not object to the dismissal of its Alliance application.
 
 
 3
 Frontier filed on September 20, 1957, what it called a "Petition to Intervene" in the Commission proceeding on Western Nebraska's application for a construction permit at Alliance, should its own application therefor be dismissed on the condition it had suggested. Frontier made factual allegations showing its existing station at Scottsbluff would be subjected to competition from Western Nebraska's proposed Alliance station,[2] and said, "[I]t seeks here an order, if such be necessary, granting it leave to intervene in the above-captioned proceeding."
 
 
 4
 The hearing examiner on October 4, 1957, denied Frontier's petition to intervene, saying that Frontier already occupied the status of an applicant in which it could make the full evidentiary showing it sought to make as an intervenor; that "there can be no legal or equitable grounds for permitting Frontier to occupy the dual status which it desires," and that "double participation of the character proposed herein by a party in proceedings of this kind is not authorized by statute or by the Rules of the Commission."
 
 
 5
 By an order entered October 10, 1957, the Commission granted Frontier's application for increased coverage on Channel 10 at Scottsbluff, and at the same time dismissed Frontier's application for a construction permit on Channel 13 at Alliance. Frontier then filed on October 15, 1957, a second petition to intervene in the Commission proceeding on Western Nebraska's application for a construction permit at Alliance. It recited that its first petition for intervention had been denied by the hearing examiner; and it claimed that Frontier, as a party in interest based on prospective economic injury, was entitled as of right to intervene in the proceeding on the Western Nebraska application for a construction permit at Alliance, following dismissal of its own application therefor.
 
 
 6
 On October 24, 1957, the hearing examiner denied Frontier's second petition to intervene, stating:
 
 
 7
 "Petitioner herein cannot be found entitled, as a matter of right, to intervene in the proceeding in view of the fact that its request was admittedly filed subsequent to the period specified for that purpose in Section 309(b) of the Act, supra. Although petitioner undoubtedly has alleged sufficient facts to show that it is a party in interest in the proceeding, within the meaning of this section, as interpreted by The Elm City case, it has not established sufficient good cause for delay in filing its request, as required by Section 1.388(d) of the rules. * * * [P]etitioner had the option to remain in the hearing in the capacity of a comparative applicant or to dismiss its application and become a party-intervenor. Nothing prevented it from dismissing the Alliance application except its own decision to remain in the hearing until its Scottsbluff application was granted. Thus, the delay in filing an appropriate petition to intervene is here held to have been caused by petitioner's own decision, which it made at its peril, and was not due to causes beyond its control. * * *"
 
 
 8
 The hearing of Western Nebraska's application for a construction permit at Alliance was resumed October 28, 1957, and proceeded to a conclusion without the presence of Frontier, which offered to participate but was excluded by the hearing examiner's ruling that it was no longer a party to the proceeding.
 
 
 9
 By an order of February 3, 1958, the Commission affirmed the hearing examiner's denial of Frontier's petitions to intervene, and held that Frontier was not a party to the proceeding after the dismissal of its application on October 10, 1957. Thereupon Frontier petitioned us under § 402(a) of the Communications Act of 1934, as amended, 47 U.S. C.A. § 402(a), to review that order. The case bears our No. 14,395.
 
 
 10
 A few days after the foregoing petition for review had been filed, the hearing examiner handed down an initial decision granting Western Nebraska's application for a construction permit at Alliance. By an order of June 19, 1958, the Commission slightly modified and made immediately effective the hearing examiner's initial decision, and denied various motions and petitions in which Frontier had sought relief from it. Thereafter Frontier appealed to us from the Commission's order of June 19, 1958, and the preliminary orders which preceded it. This appeal was taken under § 402(b) of the Act, 47 U.S.C.A. § 402 (b). It is our case No. 14,539, and has been consolidated with No. 14,395.
 
 
 11
 We need not decide whether the Commission's order of February 3, 1958, which denied intervention and held Frontier was no longer a party, was appealable when the petition to review it — No. 14,395 — was filed. For in case No. 14,539 the appeal from the final order granting a construction permit to Western Nebraska brings before us for review all interlocutory orders which preceded it, including of course the order attacked by the first petition for review. Decision of the so-called intervention issue in the later case will control the decision of case No. 14,395.[3]
 
 
 12
 Under § 309(b), a petition for intervention is the method by which a stranger to the record who deems himself a party in interest may present to the Commission his claim to be a party to the proceeding. In the petition he must seasonably show the basis for his interest, thus enabling the Commission to determine whether his allegations show him to be a "party in interest." If so, he is entitled of right to become a party to the proceeding.[4] So, it is a work of supererogation for one who is a party to a proceeding because of his interest as an applicant to seek to intervene merely to acquire the status of a party. Accordingly, the Commission was correct in denying the first petition for intervention insofar as Frontier sought to become a party to the proceeding.
 
 
 13
 But the first petition to intervene showed Frontier had a basis for interest as a competitor, quite apart from its interest as an applicant. The whole tenor of the pleading indicates that Frontier was setting forth reasons for continuing to be a party, even though it should cease to be an applicant.[5] Unfortunately it denominated its pleading merely "Petition to Intervene," i. e., to become a party, when in fact the pleading was a petition that another basis for interest in being a party be recognized. The confusion thus generated by Frontier doubtless caused the Commission to treat the pleading only as a petition to become a party, without realizing the significance of the information it contained about an additional basis for interest, — no matter what the pleading itself was called.
 
 
 14
 A party to a proceeding may have more than one basis for interest, each entitling him to be a party. And, having status as a party because of one basis of interest already known to the Commission, he has a right to give timely notice of another basis for interest which also entitles him to be a party to the proceeding. When he has done that, as Frontier did here, he is a party for two reasons. Obviously the loss of one basis for interest would not destroy the other and, despite its loss, he would remain a party to the proceeding.
 
 
 15
 The Commission had been seasonably informed that economic injury constituted a second and continuing basis for Frontier's interest which, standing alone, clearly entitled it to be a party to the proceeding. It follows that the Commission erred in holding the dismissal of Frontier's application for a construction permit terminated its status as a party to the proceeding. The dismissal terminated only one of the two bases for Frontier's interest, either of which sufficed to support its status as a party.
 
 
 16
 Frontier was therefore erroneously denied the right to participate in the hearing on Western Nebraska's application. The order of June 19, 1958, granting a construction permit to Western Nebraska will be set aside and the cases remanded to the Commission for a new hearing in which Frontier will be permitted to participate as a party.
 
 
 17
 Other matters remain for consideration. While it was still an applicant, Frontier filed on July 1, 1957, a motion that the Commission enlarge the scope of the hearing by adding several issues going to the financial and character qualifications of Western Nebraska. This was principally based on allegations that Western Nebraska had sold shares of its capital stock in interstate commerce without registering with the Securities and Exchange Commission, and that it had made false and misleading statements to the public during its campaign to sell capital stock and so had violated state laws.
 
 
 18
 In its order of February 3, 1958, the Commission said of the foregoing motion, "In view of our determination that Frontier is not a party to the proceeding and will not be permitted to intervene, the motion to enlarge issues filed by it is moot and will not be considered further." But in the order of June 19, 1958, the Commission did consider further the proposals contained in the motion to enlarge issues. This occurred in the discussion of Frontier's later petition for further hearing,[6] which rephrased and added to the former proposals for enlargement of issues, when the Commission said: "Thus, without regard to the standing of Frontier which it lacks, we see no matters presented which, under the public interest standard, would warrant grant of the relief requested."
 
 
 19
 Hence, the Commission not only denied Frontier the status of a party but also held that — granting status arguendo — the facts alleged in support of the proposals to add issues were insufficient to warrant their addition.
 
 
 20
 As we have held heretofore in this opinion, Frontier was entitled to remain a party to the proceeding after it ceased to be an applicant because it had shown itself still to be a party in interest through the allegations of the pleading it mistakenly gave the restrictive title of "Petition to Intervene." Hence, its motion to enlarge issues should not have been denied for lack of standing as a party.
 
 
 21
 But there remains the Commission's holding that, assuming standing in Frontier, nothing presented warranted the relief sought. We think the Commission also erred in this ruling on the merits of the petition for further hearing, which was in reality nothing more than a renewal, with some additions, of the previous motion to enlarge the issues. The charges of irregularity in connection with the offer and sale of Western Nebraska's capital stock reflect on its fitness to be a permittee, and should be investigated by the Federal Communications Commission. If it considers the issue already designated concerning Western Nebraska's qualifications, and the general issue as to whether a grant to the applicant would be in the public interest, as being too narrow to permit such investigation, the Commission should frame such additional questions as will encompass the charges made by Frontier in its motion to enlarge the issues, and permit full hearing concerning them.
 
 
 22
 At the new hearing Frontier will have the opportunity of offering any relevant proof it may have concerning the matters about which it was denied further hearing.
 
 
 23
 Reversed and remanded for further proceedings.
 
 
 
 Notes:
 
 
 *
 Sitting by designation pursuant to Sec. 294(a), Title 28, U.S.Code
 
 
 [1]
 The comparative hearing began as scheduled on October 1, 1957, but was recessed from that day until October 28, 1957
 
 
 [2]
 The hearing examiner said, "* * * [P]etitioner undoubtedly has alleged sufficient facts to show that it is a party in interest in the proceeding, within the meaning of this section [§ 309(b), 47 U.S. C.A. § 309(b)] * * *." He made this statement on October 24, 1957, in dismissing Frontier's second petition to intervene, but it applies equally well to the first petition to intervene, since the factual allegations concerning economic injury are substantially the same in both petitions
 Frontier's anticipated economic injury therefore qualified it as a party to the proceeding. Federal Communications Commission v. Sanders Bros. Radio Station, 1940, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869; Camden Radio v. Federal Communications Commission, 1954, 94 U.S.App.D.C. 312, 316 (2nd col.) 220 F.2d 191, 195 (2nd col.); Greenville Television Co. v. Federal Communications Commission, 1955, 95 U.S.App.D.C. 314, 221 F.2d 870.
 
 
 [3]
 Although the hearing examiner had ruled in October, 1957, that Frontier was no longer a party to the proceeding, the Commission says in its brief in the consolidated cases that Case No. 14,539 is "an appeal by an interested party from the grant of Western Nebraska's construction permit and all ancillary interlocutory orders." The Commission's brief concludes that, therefore, there is no need for this court to decide whether the order denying intervention was appealable at the time the petition to review it — No. 14,395 — was filed
 Western Nebraska agrees, saying in its brief:
 "Case No. 14,395, a petition for review under Sec. 402(a) of the Communications Act, is moot, because the appeal brought in Case No. 14,539 from final agency action raises all the issues in the petition for review. Consequently, this Court will be guided in its reviewing function by Sec. 10(e) of the Administrative Procedure Act [5 U.S.C.A. § 1009(e)]."
 
 
 [4]
 We said in Elm City Broadcasting Corp. v. United States, 1956, 98 U.S.App.D.C. 314, 319, 235 F.2d 811, 816:
 "* * * We think it clear that the only legislative purpose in requiring petitioners for intervention to show `the basis for their interest' is to enable the Commission to determine whether the petitioners' allegations show them to be `parties in interest.' When that is done, the Commission has exhausted its discretion; it may not deny intervention to a party in interest merely because it thinks his participation would not aid its decisional process."
 
 
 [5]
 We quote from the first petition to intervene:
 "But Frontier wishes to make it clear, and this is the purpose of the instant Petition, that it desires and intends to continue to be a party to the instant proceeding even if its Alliance application should be dismissed as outlined above." (Emphasis supplied.)
 
 
 [6]
 The petition for further hearing was filed by Frontier after the initial decision making the grant to Western Nebraska was released by the hearing examiner March 26, 1958