**SPANISH INTERNATIONAL BROAD-CASTING COMPANY, Appellant,**

v.

**FEDERAL COMMUNICATIONS COM-MISSION, Appellee,**

International Panorama TV, Inc., Intervenor.

No. 20326.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 7, 1966.

Decided April 18, 1967.

Petition for Rehearing En Banc Denied June 7, 1967.

Mr. Donald E. Ward, Washington, D. C., for appellant. Mr. Howard Jay Braun, Washington, D. C., also entered an appearance for appellant.

Mr. William L. Fishman, Counsel, F. C. C., with whom Messrs. Henry Geller, Gen. Counsel, John H. Conlin, Associate Gen. Counsel, and Joseph A. Marino, Counsel, F. C. C., were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, F. C. C., also entered an appearance for appellee.

Mr. James A. Gammon, Washington, D. C., with whom Mrs. Lorie M. Molnar, Washington, D. C., was on the brief, for intervenor.

Before PRETTYMAN, Senior Circuit Judge, and FAHY and ROBINSON, Circuit Judges.

## SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal challenges the validity of orders made by the Federal Communications Commission in a proceeding for a construction permit on the ground that they improperly barred a party in interest from participation.

International Panorama TV, Inc., the intervenor here, applied for authority to construct a new UHF television station to serve Fontana, California, as its principal community. Its proposal contemplated operation on Channel 40 from a transmitter and tower located on Mount Wilson, which would place a principal city signal over Los Angeles, and allocation of a significant part of its programming to foreign language broadcasts, including Spanish.

Appellant, Spanish International Broadcasting Company, is the licensee of KMEX-TV, a UHF television station in Los Angeles transmitting on Channel 34 from Mount Wilson, which programs almost exclusively in Spanish. It launched the contest that blossomed before the Commission.

Intervenor's application was filed on April 22, 1963. Public notice was given thereafter and again on August 21, 1963, when the application was amended substantially. On May 18, 1964, appellant, asserting potential economic competition with intervenor as a basis for standing, petitioned for denial of the application on four separate grounds, one of which was that intervenor lacked the required character qualifications. Intervenor countered with argument that appellant lacked standing as a party in interest and that its opposition came too late.

The Commission, on October 2, 1964, released a memorandum opinion and order dismissing appellant's petition on a finding that it was untimely and that good cause for waiving the delay had not been shown. For these reasons, the Commission concluded that it was unnecessary to determine whether appellant had standing to oppose the application. Nonetheless, because of their public importance, it treated extensively the questions raised by appellant. It found that all of the points lacked merit save its claim respecting intervenor's character qualifications, and this issue it designated for hearing. Its opinion recited that "[t]he Commission, after due deliberation, has determined that it will not make Spanish International a party to this proceeding."

Appellant made no further effort to participate until January 24, 1966, nearly two months after the hearing examiner had released an initial decision in intervenor's favor. It then invoked the Commission's processes in efforts, hereinafter chronicled, to gain admission to the proceeding and a redetermination of in-

tervenor's application. These activities proved unsuccessful, and this appeal followed.

## I

At the outset, we address ourselves to intervenor's caveat to our jurisdiction, a matter we would in any event be required to scrutinize, examining first the relevant procedural events. The examiner's initial decision was issued on November 29, 1965. The Commission's Broadcast Bureau, which had appeared as a party and actively opposed intervenor's application, obtained an extension to January 31, 1966, of the time within which exceptions thereto might be filed but did not itself register objection, nor did the Commission exert its authority to order further consideration on its own initiative. On January 24, appellant filed a petition for leave to intervene, exceptions to the decision, and a motion to reopen the record. The Commission's Review Board dismissed these pleadings on February 21, and the Commission, without stating reasons, denied a review of its order on March 4. On the same date, the Commission released a public notice announcing the effective date of the decision.

On April 1, appellant filed a petition for rehearing of both of the dispositions made by the Commission on March 4. This petition the Commission denied on June 15. Compliably with its regulation, the Commission summarily dismissed the prayer that it reconsider its order denying review and, on the premise that an initial decision can be reheard only upon exceptions by an existing party, denied relief of that character. The noting of

this appeal on July 14, within the statutory 30-day period from June 15 but beyond it when measured from March 4, is said to be fatally untimely.

Under the provisions of the Federal Communications Act,[1] an appeal to this court may be taken by any "person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying" certain applications [2] among which are those "for a construction permit or station license." [3] Such an appeal can be taken only "by filing a notice of appeal with the court within thirty days from the date upon which public notice is given of the decision or order complained of." [4] Upon the filing of such notice, this court acquires "jurisdiction of the proceedings and of the questions determined therein." [5] To resolve the present question, we must consider the interplay of these provisions with those prescribing the Commission's review and rehearing procedures.

The Commission is statutorily authorized to delegate functions to subordinate boards [6] whose unreviewed action matches that of the Commission.[7] Any aggrieved person may, however, apply for review by the Commission, and the Commission may review on its own motion.[8] An application for such a review is prerequisite to judicial review of any action taken pursuant to Commission delegation, and the period for an appeal therefrom commences "from the date upon which public notice is given of orders disposing of all applications for review filed in any case." [9]

Additionally, by the legislation set forth below,[10] Congress has also compre-

---

1. 48 Stat. 1064 (1934) as amended, 47 U.S.C. § 151 et seq.

2. 47 U.S.C. § 402(b).

3. 47 U.S.C. § 402(b) (1).

4. 47 U.S.C. § 402(c).

5. *Ibid.*

6. 47 U.S.C. § 155(d) (1).

7. 47 U.S.C. § 155(d) (3).

8. 47 U.S.C. § 155(d) (4).

9. 47 U.S.C. § 155(d) (7).

10. "After an order, decision, report, or action has been made or taken in any proceeding by the Commission, or by any designated authority within the Commission pursuant to a delegation under Section 155(d) (1) of this title, any party thereto, or any other person aggrieved or whose interests are adversely affected thereby, may petition for rehearing only to the authority making

hensively provided for discretionary administrative rehearings at the instance of parties or non-parties. Any "order, decision, report, or action," made or taken either by the Commission or its delegate, may be reheard at the instance of any "person aggrieved or whose interests are adversely affected thereby". The filing of a petition for rehearing is a condition precedent to any judicial review sought by one who "was not a party to the proceedings resulting in such order, decision, report, or action". The petition to review must be filed within 30 days following public notice of the action complained of, and the time within which an appeal must be taken is measured "from the date upon which public notice is given of orders disposing of all petitions for rehearing filed with the Commission in such proceeding or case."

Appellant, having failed to achieve intervention at the hand of the Review Board, was required to seek review of the Board's action by the Commission. And whether or not appellant was a stranger to the intervention aspects of the proceeding [11] and as such compelled to request rehearing on the Commission's disposition on that review, the Act accorded it liberty to do so. Appellant pursued this privilege by presentation to the Commission, which rather than the Board had last spoken on intervention, of a timely petition for reconsideration. With the Commission's denial of this petition on June 15 and the filing of notice of appeal on July 14, the litigation came to us in time.

██ While a refusal of intervention sought of right is appealable immediate-

---

or taking the order, decision, report, or action; and it shall be lawful for such authority, whether it be the Commission or other authority designated under Section 155(d) (1) of this title, in its discretion, to grant such a rehearing if sufficient reason therefor be made to appear. A petition for rehearing must be filed within thirty days from the date upon which public notice is given of the order, decision, report, or action complained of. No such application shall excuse any person from complying with or obeying any order, decision, report, or action of the Commission, or operate in any manner to stay or postpone the enforcement thereof, without the special order of the Commission. The filing of a petition for rehearing shall not be a condition precedent to judicial review of any such order, decision, report, or action, except where the party seeking such review (1) was not a party to the proceedings resulting in such order, decision, report, or action, or (2) relies on questions of fact or law upon which the Commission, or designated authority within the Commission, has been afforded no opportunity to pass. The Commission, or designated authority within the Commission, shall enter an order, with a concise statement of the reasons therefor, denying a petition for rehearing or granting such petition, in whole or in part, and ordering such further proceedings as may be appropriate: Provided, that in any case where such petition re-

lates to an instrument of authorization granted without a hearing, the Commission, or designated authority within the Commission, shall take such action within ninety days of the filing of such petition. Rehearings shall be governed by such general rules as the Commission may establish, except that no evidence other than newly discovered evidence, evidence which has become available only since the original taking of evidence, or evidence which the Commission or designated authority within the Commission believes should have been taken in the original proceeding shall be taken on any rehearing. The time within which a petition for review must be filed in a proceeding to which Section 402(a) of this title applies, or within which an appeal must be taken under Section 402 (b) of this title in any case, shall be computed from the date upon which public notice is given of orders disposing of all petitions for rehearing filed with the Commission in such proceeding or case, but any order, decision, report, or action made or taken after such rehearing reversing, changing, or modifying the original order shall be subject to the same provisions with respect to rehearing as an original order." 47 U.S.C. § 405.

11. See Gerico Investment Co. v. FCC, 99 U.S.App.D.C. 379, 380, 240 F.2d 410, 411 (1957).

ly,[12] the appeal may be deferred until the Commission has acted terminally.[13] Consequently, although appellant could have appealed from the order of October 2, 1964, declining to name it as a party to the proceeding, the Commission's denial of review of the Board's action on its intervention effort presented a further opportunity. The petition for rehearing of that denial tolled the appeal period until it was finally acted upon,[14] and the appeal brought up for our consideration not only the action on intervention but also the October 2, 1964, order.[15]

We do not, in so holding, touch upon the Commission's conclusion that the examiner's initial decision was not a proper subject of the review and rehearing processes.[16] With the point now abandoned,[17] we are not called upon to treat the merits of the examiner's decision upon this appeal. But, despite the Commission's disinclination, expressed by regulation,[18] to entertain requests for reconsideration of action for which no reasons were specified, we do have properly before us the orders bearing upon appellant's litigating status. "The power to reconsider is inherent in the power to decide",[19] and we have noted that the Commission has reserved authority to nullify, on its motion, any previous action within the period rehearing may be sought or an appeal may be noted.[20] In Albertson v. FCC,[21] we held that the time for taking an appeal was tolled by a motion seeking reconsideration of an order denying "rehearing" of a construction permit grant; that

> "Needless to say, if it can set aside its action, the power to do so is not restrained by the words of the rule which refer only to action taken on *its own motion*. The authority is not derived from the rule but from the implied powers arising out of the Act. Therefore, if it may, as it undoubtedly can, reconsider previous action and set the same aside on its own motion, there is nothing to preclude it from doing so upon the motion of an interested party." [22]

We now move to an examination of appellant's contentions. Asserting itself

12. Interstate Broadcasting Co. v. United States, 109 U.S.App.D.C. 255, 286 F.2d 539 (1960). See also American Communications Ass'n v. United States, 298 F.2d 648, 650 (2d Cir. 1962).

13. Interstate Broadcasting Co. v. United States, *supra* note 12; Frontier Broadcasting Co. v. United States, 105 U.S.App.D.C. 161, 164, 265 F.2d 353, 356 (1959).

14. 47 U.S.C. § 405. See also Southland Industries v. FCC, 69 App.D.C. 82, 84, 85, 99 F.2d 117, 119, 120 (1938); Saginaw Broadcasting Co. v. FCC, 68 App. D.C. 282, 285–287, 96 F.2d 554, 557–559, cert. denied Gross v. Saginaw Broadcasting Co., 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938).

15. Frontier Broadcasting Co. v. United States, *supra* note 13, 105 U.S.App.D.C. at 164, 265 F.2d at 356.

16. See 47 U.S.C. §§ 155(d) (2), 409(a)–(b); S.Rep. No. 576, 87th Cong., 1st Sess. 8 (1961); H.R.Rep. No. 723, 87th Cong., 1st Sess. 4 (1961), U.S.Code Congressional and Administrative News, p. 2462.

17. Appellant originally assigned as error the decision granting intervenor a construction permit but later withdrew the contention. With the disposition we make of this appeal, we would not in any event reach that issue.

18. "The Commission may grant the application for review in whole or in part, or may deny the application, without specifying reasons for the action taken. No petition requesting reconsideration of an order which denies an application for review without specifying reasons therefor will be entertained." 47 C.F.R. § 1.115(g) (1966).

19. Albertson v. FCC, 87 U.S.App.D.C. 39, 41, 182 F.2d 397, 399 (1950).

20. "The Commission may, on its own motion, set aside any action made or taken by it within 30 days after release of the document containing the full text of such action. * * *" 47 C.F.R. § 1.108 (1966).

21. *Supra* note 19.

22. 87 U.S.App.D.C. at 42, 182 F.2d at 400.

as a party in interest [23] and as such entitled to party status, it urges that the Commission had a duty to make it a party to the hearing. It views the Commission's action of October 2, 1964, as barring its participation and its post-decision determinations as compounding the error. We disagree. We perceive no error in the Commission's several rulings on appellant's overdue requests nor did the Commission prevent appellant from participating in the proceedings. We hold that the Commission was well within its authority in finding appellant's tardiness to be inexcusable and that its failure to utilize available administrative remedies to seek admission as a participant bars judicial relief.

## II

Intervenor's application inaugurated a proceeding wherein the Commission was to determine whether the public interest, convenience and necessity would be served by granting it.[24] The Act authorizes a party in interest to file a petition to deny such an application and broadly empowers the Commission to specify the period within which this may be done.[25] This the Commission has accomplished by a regulation requiring, with exceptions not pertinent here, that the petition be filed within 30 days after issuance of a public notice of the acceptance of the application or an amendment thereto for filing.[26]

As previously stated, intervenor's application was originally filed on April 22, 1963, and public notice was twice given, the last time on August 21, 1963, when an amendment was accepted for filing. The petition to deny was not filed until May 18, 1964, and appellant thereafter requested waiver of the regulation on the ground that it was unable to develop full information as to intervenor's character qualifications within the period prescribed. The Commission found, however, that some of the evidence pertaining to that matter was in its possession and that the bases asserted for its other three objections [27] existed sufficiently early to enable it to comply with the time limitations applicable.

We have had occasion to observe that

"Congress clearly recognized that sound regulation has procedural as well as substantive elements, and that 'the public interest, convenience, and necessity' comprehends both. Orderliness, expedition, and finality in the adjudicating process are appropriate weights in the scale, as reflecting a public policy which has authentic claims of its own." [28]

To this there is relatively little that we need add. The Commission found that the petition to deny was unpunctual and that the delay had not been justified. Our examination of the record discloses ample support for these findings. In these circumstances we could hardly characterize its dismissal of the petition for this reason as arbitrary or otherwise beyond the ambit of its authority.[29]

---

23. See FCC v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869 (1940); Interstate Broadcasting Co. v. United States, *supra* note 12, 109 U.S.App.D.C. at 260, 286 F.2d at 544; Interstate Broadcasting Co. v. FCC, 109 U.S.App.D.C. 190, 285 F.2d 270 (1960); Frontier Broadcasting Co. v. United States, *supra* note 13, 105 U.S.App.D.C. at 165, 265 F.2d at 357.

24. 47 U.S.C. § 309(a).

25. 47 U.S.C. § 309(d) (1).

26. 47 C.F.R. § 1.580(i) (1966).

27. In addition to its attack upon the intervenor's character qualifications, appellant urged that the intervenor (a) was not financially qualified; (b) had not adequately determined the needs and interests of the area to be served; and (c) had not complied with 47 U.S.C. § 307(b) and implementing regulations concerning the allocation of facilities among communities.

28. Valley Telecasting Co. v. FCC, 118 U.S.App.D.C. 410, 413, 336 F.2d 914, 917 (1964).

29. WLIL, Inc. v. FCC, 122 U.S.App.D.C. 246, 249, 352 F.2d 722, 725 (1965); Valley Telecasting Co. v. FCC, *supra* note 28, 118 U.S.App.D.C. at 415, 336 F.2d at 919.

## III

The Commission may or may not be able to resolve without a hearing the issues arising upon an application for a construction permit. Recognizing this, Congress has prescribed a comprehensive course of procedure for these cases. The Commission is required to determine, with reference to every such application, whether the public interest, convenience and necessity will be served by granting it.[30] If this determination can be made by examination of the application and consideration of matters it may officially notice, the requested permit must be granted.[31] If, on the other hand, because of the presentation of a substantial and material question of fact or some other reason, the Commission is unable to make the essential finding, it must formally designate the application for a suitable hearing.[32] In that event, the Act provides, the Commission must "forthwith notify the applicant and all other known parties in interest of such action and the grounds and reasons therefor" and "the parties in interest, if any, who are not notified by the Commission of such action may acquire the status of a party to the proceeding thereon by filing a petition for intervention showing the basis for their interest not more than thirty days after publication of the hearing issues or any substantial amendment thereto in the Federal Register." [33] The Act further commands that "[a]ny hearing subsequently held upon such application shall be a full hearing in which the applicant and all other parties in interest shall be permitted to participate." [34]

Commission regulations implement and amplify the statutory specifications. Upon the designation of an application for hearing, the Commission, on its own motion, names as a party to the hearing any person found to be a party in interest,[35] and the person so named need only file a proper and timely appearance stating that he will appear at the hearing.[36] If the Commission fails "to notify and name" as a party to the hearing any person who qualifies as a party in interest, that person may become a party by filing a timely petition for intervention, which will be granted if his status as a party in interest is established.[37] Even if the petition to intervene is filed late, it may, upon good cause being shown therefor, be granted at the Commission's discretion.[38] The regulations also

---

30. 47 U.S.C. § 309(a).

31. 47 U.S.C. § 309(d) (2).

32. 47 U.S.C. §§ 309(d) (2)–(e).

33. 47 U.S.C. § 309(e).

34. *Ibid.*

35. 47 C.F.R. § 1.221(d) (1966).

36. "In order to avail himself of the opportunity to be heard, any person named as a party pursuant to paragraph (d) of this section shall, within 20 days of the mailing of the notice of his designation as a party, file with the Commission, in person or by attorney, a written appearance in triplicate, stating that he will appear at the hearing. Any person so named who fails to file this written statement within the time specified, shall, unless good cause for such failure is shown, forfeit his hearing rights." 47 C.F.R. § 1.221(e) (1966).

37. "Where, in cases involving applications for construction permits and station licenses, or modifications or renewals thereof, the Commission has failed to notify and name as a party to the hearing any person who qualifies as a party in interest, such person may acquire the status of a party by filing, under oath and not more than 30 days after the publication in the Federal Register of the hearing issues or any substantial amendment thereto, a petition for intervention showing the basis of its interest. * * * Where the person's status as a party in interest is established, the petition to intervene will be granted." 47 C.F.R. § 1.223(a) (1966).

Time limitations imposed by the regulations have been kept congruent with those laid down by the statute. The period specified in § 1.223(a) and in § 1.223(d), cited *infra* note 38, was a change effected June 19, 1964, 29 Fed. Reg. 7821, conformably with the change in 47 U.S.C. § 309(e).

38. "Any person desiring to file a petition for leave to intervene later than 30 days

permit non-party participation [39] and provide that "[n]o person shall be precluded from giving any relevant, material, and competent testimony at a hearing because he lacks a sufficient interest to justify his intervention as a party in the matter." [40]

Read compositionally, the statute and the regulations articulate two propositions very distinctly. One is that those who are actually parties in interest but who have not been notified of the hearing must seasonably petition for intervention in order to achieve party status. The other is that the Commission, upon designating the hearing, *sua sponte* names as parties to the hearing those found to be parties in interest, and they need only file an appearance in order to qualify as hearing participants. But the statute is silent as to what, if anything, those who are actually parties in interest need do if cognizant of the hearing. We note, too, that while the statute in terms requires only unnotified parties in interest to seek intervention, the regulation speaks of a need therefor not only by unnotified parties in interest but also by those who are not named as parties to the hearing.

We see no occasion, however, for exploration of the intriguing interpretive possibilities thus suggested or for testing the regulation against the statute. Nor do we see the issue here as one narrowly involving a decisional choice merely between opposing duties upon the Commission to name appellant as a party and upon appellant itself to seek intervention. The crucial fact is that appellant had actual knowledge of the designation of the hearing but did nothing at all. It did not seek intervention, or file the appearance required of those who need not intervene, although the statute and the regulations, by any construction, required one or the other. It did not attempt to participate in the hearing, either as a party or a non-party, which unless barred by the Commission it was bound to do. It did not seek reconsideration of the designation order, of which it now so bitterly complains. We think that, with this, appellant faces too substantial a legal obstacle to enable it to prevail upon this aspect of the appeal.

We refer, of course, to "the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." [41] This canon has frequently suffused our reviews of the Commission's action.[42] It

---

after the publication in the Federal Register of the hearing issues or any substantial amendment thereto shall set forth the interest of petitioner in the proceedings, show how such petitioner's participation will assist the Commission in the determination of the issues in question, and set forth reasons why it was not possible to file a petition within the time prescribed by paragraphs (a) and (b) of this section. * * * If, in the opinion of the presiding officer, good cause is shown for the delay in filing, he may in his discretion grant such petition or may permit intervention limited to particular issues or to a particular stage of the proceeding." 47 C.F.R. § 1.223(d) (1966).

39. "Any person who wishes to appear and give evidence on any matter, and who so advises the Secretary, will be notified by the Secretary if that matter is designated for hearing." 47 C.F.R. § 1.225(a) (1966).

40. "No person shall be precluded from giving any relevant, material, and competent testimony at a hearing because he lacks a sufficient interest to justify his intervention as a party in the matter." 47 C.F.R. 1.225(b) (1966).

41. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

42. Albertson v. FCC, 100 U.S.App.D.C. 103, 105–106, 243 F.2d 209, 211–212 (1957); Colorado Radio Corp. v. FCC, 73 App.D.C. 225, 228, 118 F.2d 24, 27 (1941); Yankee Network v. FCC, 71 App.D.C. 11, 15, 107 F.2d 212, 216 (1939); Woodmen of the World Life In-

"does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion and, correlatively, of awaiting their final outcome before seeking judicial intervention." [43] One of the purposes these principles subserve is an opportunity for administrative correction of matters otherwise to be judicially protested as error.[44]

We have had occasion to consider the impact of the exhaustion doctrine in a factual context very similar to that presented here. In Red River Broadcasting Co. v. FCC,[45] the appellant, claiming economic aggrievement, sought review of an order granting to one Baxter a permit for the construction of a radio station. The appellant was not notified of or made a party to the hearing on the application nor had it sought to take part therein. For purposes of the appeal we assumed, among other things, that the appellant was an interested party and as such was, by virtue of Commission regulations, entitled to formal notice of the hearing. But the record disclosed that the appellant had learned of the proceeding, at least in time to seek rehearing, but nonetheless had failed to utilize either of four methods, including rehearing, apparently available in an effort to gain participation. We dismissed the appeal, pointing out that

"The reason for the rule requiring exhaustion of administrative remedies is well exemplified in this case for, assuming that the Commission erroneously failed to give notice of hearing

on the Baxter application, still, if appellant had used one of the other available methods—particularly the petition for a rehearing—to call attention to the error, it was within the power of the Commission to correct the error and fully to protect appellant." [46]

Ruling that "[t]he burden * * * is, and properly should be, upon an interested person to act affirmatively to protect himself," [47] we held that

"* * * in order to bring itself within the statutory provisions governing appeals by an aggrieved person, appellant must show, not only—as we have assumed but not decided—that it is affected by the order appealed from, but that it has failed to secure relief after having availed itself of any prescribed administrative procedure by which it could have protected its interests." [48]

We do not regard the Commission's statement in its memorandum opinion and order of October 2, 1964, that "after due deliberation" it "has determined that it will not make Spanish International a party to this proceeding" as a sufficient impediment to justify appellant in declining to take further prehearing steps in an attempt to achieve party status. As the Commission stated, appellant's petition to deny stood dismissed as untimely, with the result that, in its view, there was no need to ascertain whether appellant was a party in interest. Without that determination, the Commission could not, when it designated the matter of intervenor's qualifi-

surance Ass'n v. FCC, 69 App.D.C. 87, 99 F.2d 122 (1938); Southland Industries v. FCC, *supra* note 14; Red River Broadcasting Co. v. FCC, 69 App.D.C. 1, 98 F.2d 282, cert. denied 305 U.S. 625, 59 S.Ct. 86, 83 L.Ed. 400 (1938).

43. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 767, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947). See also Neisloss v. Bush, 110 U.S.App.D.C. 396, 401–402, 293 F.2d 873, 878–879 (1961); Red River Broadcasting Co. v. FCC, *supra* note 42, 69 App.D.C. at 3, 5, 98 F.2d at 284, 286.

44. See United States v. Morton Salt Co., 338 U.S. 632, 653–654, 70 S.Ct. 357, 94 L.Ed. 401 (1950); Natural Gas Pipeline Co. v. Slattery, 302 U.S. 300, 311, 58 S.Ct. 199, 82 L.Ed. 276 (1937); P. F. Petersen Baking Co. v. Bryan, 290 U.S. 570, 575–576, 54 S.Ct. 277, 78 L.Ed. 505 (1934).

45. *Supra* note 42.

46. 69 App.D.C. at 5, 98 F.2d at 286.

47. *Ibid.*

48. 69 App.D.C. at 6, 98 F.2d at 287.

cations for hearing, have proceeded to make appellant a party, for only a party in interest may be made a party to the proceeding. In this context, it is difficult to read the statement as an indefeasible ruling that appellant could not become a party. To us it seems more readily susceptible to the interpretation that the Commission had merely determined that it would not on its own motion name appellant as a party, particularly since, as appellant must have known, if it were actually a party in interest, the Commission could not have rebuffed its petition to intervene on that basis.[49]

◼ In any event, with the statement ambiguous, we cannot find warrant, from the statute or otherwise, for appellant's unilateral decision to sit out the hearing. If the statute, properly applied in the circumstances, did not condition its party status upon a formal petition to intervene, it had only to give notice of its appearance and present itself at the hearing. It could, in any event, have filed at the outset the petition to intervene which it brought forward only when the proceedings were nearly concluded. Either step would have forced a prompt and adequate determination as to its status, and assured its full participation if it qualified as a party in interest.

Instead, it chose to await the virtual end of the litigation to make its move.

◼ Appellant tells us that its inertia was prompted by a belief that the Commission's statement forecast the doom of any further effort, but we cannot accept this as a sufficient explanation. A party is not required to pursue a plainly futile remedy,[50] but not even the probability of an administrative denial of relief will excuse the effort.[51] We say here, as we have in other cases, that "appellant should have sought its remedies and awaited the action of the Commission. It cannot be heard to complain in this court that there was danger of refusal when it made no effort to do so." [52]

## IV

Now reaching the final issue, we recapitulate, for its consideration, certain events occurring near the end of the Commission proceeding. On January 24, 1966, appellant presented its petition seeking, for the first time, leave to intervene in the proceeding in order that it might attack the examiner's initial decision. It contemporaneously filed exceptions to the decision with a supporting brief, and a motion to reopen the record in order to adduce further evidence. Replying to opposition to the petition, appellant indicated surprise that the Broad-

49. Elm City Broadcasting Corp. v. United States, 98 U.S.App.D.C. 314, 235 F.2d 811 (1956). See also Interstate Broadcasting Co. v. United States, *supra* note 12, 109 U.S.App.D.C. at 257, 286 F.2d at 541; Frontier Broadcasting Co. v. United States, *supra* note 13, 105 U.S. App.D.C. at 165, 265 F.2d at 357.

50. City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 34, 54 S.Ct. 259, 78 L.Ed. 628 (1934); Montana National Bank of Billings v. Yellowstone County, 276 U.S. 499, 505, 48 S.Ct. 331, 72 L.Ed. 673 (1928); Waite v. Macy, 246 U.S. 606, 609, 38 S.Ct. 395, 62 L.Ed. 892 (1918).

51. United States Navigation Co. v. Cunard Steamship Co., 284 U.S. 474, 487–488, 52 S.Ct. 247, 76 L.Ed. 408 (1932); United States v. Felt & Tarrant Manufacturing Co., 283 U.S. 269, 272–273, 51

S.Ct. 376, 75 L.Ed. 1025 (1931); Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 208–209, 49 S.Ct. 282, 73 L.Ed. 652 (1929); Rock Island, A. & L. R. Co. v. United States, 254 U.S. 141, 142–143, 41 S.Ct. 55, 65 L.Ed. 188 (1920).

52. Red River Broadcasting Co. v. FCC, *supra* note 42, 69 App.D.C. at 7, 98 F.2d at 288. See also Highland Farms Dairy v. Agnew, 300 U.S. 608, 616, 57 S.Ct. 549, 81 L.Ed. 835 (1937); Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 123, 46 S.Ct. 215, 70 L.Ed. 494 (1926); Black River Valley Broadcasts v. McNinch, 69 App.D.C. 311, 317, 101 F.2d 235, 241 (1938), cert. denied 307 U.S. 623, 59 S.Ct. 793, 83 L.Ed. 1501 (1939); Mallory Coal Co. v. National Bituminous Coal Comm'n, 69 App.D.C. 166, 174, 99 F.2d 399, 407 (1938).

cast Bureau, which had resisted intervenor's application throughout the hearing, would not challenge the decision, and urged that it be admitted as a party for the purpose of arguing its position to the Review Board and, if necessary, to the Commission.

The Board noted that the petition to intervene was untimely and that it did not advance any reason as to why intervention could not have been seasonably sought. It accordingly dismissed the petition and the associated pleadings, and the Commission denied appellant's application for review and reversal of the Board's order. We sustain the action of both.

For reasons already delineated, we have held that appellant, as a part of its duty to exhaust administrative remedies, was obligated to seek intervention in the proceeding before the Commission. For reasons now to be discussed, we hold that its effort to intervene should have been made within the time specified by law.

█ We have previously referred to the provisions of the Act [53] and the regulations [54] specifying a 30-day period following publication of the hearing issues or an amendment thereof within which intervention of right may be sought. With the publication here occurring on October 8, 1964, appellant's petition to intervene, filed more than 15 months thereafter, was patently tardy.

Prior to 1964, the statute permitted any party in interest not notified of the designation of an application for hearing to file a petition for intervention "at any time not less than ten days prior to the date of hearing." [55] This provision in practice, impeded the handling and disposition of hearing cases, particularly by curtailing the effectiveness of prehearing conferences as expediting measures. The purpose of the 1964 amendment was "to require a party in interest who wishes to intervene in a hearing to signify his intention to do so" within the period newly prescribed,[56] with the wholesome by-product consisting in its tendency to "discourage dilatory tactics now possible under the present provisions." [57]

█ Appellant in its brief has enlightened us on the strategy it pursued in foregoing an immediate appeal from the Commission's failure to make it a party.[58] It had decided to rely upon the Broadcast Bureau to carry the battle before the Commission with a view, in the event of an adverse decision, to appealing from both the decision and its exclusion from the hearing.[59] We have previously had occasion to condemn such tactics by those interested in the administrative proceeding:

"Such a person should not be entitled to sit back and wait until all interested persons who do so act have been heard, and then complain that he has not been properly treated. To permit such a person to stand aside and speculate on the outcome; if adversely affected, come into this court for relief; and then permit the whole mat-

---

53. *Supra* note 33 and related text.

54. *Supra* note 37 and related text.

55. 66 Stat. 715 (1952).

56. S.Rep. No. 478, 88th Cong., 1st Sess. 1 (1963); H.R.Rep. No. 1351, 88th Cong., 2d Sess. 1 (1964).

57. S.Rep. No. 478, 88th Cong., 1st Sess. 2 (1963); H.R.Rep. No. 1351, 88th Cong., 2d Sess. 2 (1964), U.S.Code Congressional and Administrative News, p. 2176.

58. See Interstate Broadcasting Co. v. United States, *supra* note 12.

59. "At that point SIBC had two choices: (1) to take an immediate appeal to this Court from the Commission's refusal to accord it standing; and (2) to await the outcome of the hearing. SIBC opted for the second course, in the firm belief that the Commission's Broadcast Bureau—a party to the proceeding— would compile and present to the Commission a full record requiring denial of the International Panorama application, and secure in the knowledge that, in the event of a grant of the International Panorama application, SIBC was entitled to appeal the decision, and its exclusion from the hearing, to this Court."

ter to be reopened in his behalf, would create an impossible situation. In a closely settled area with a number of existing stations such a procedure would permit successive appeals by many persons and as a result a complete blocking of administrative action." [60]

We have also made it clear that exhaustion of administrative remedies means utilization of the earliest available corrective step:

"We do not decide that appellant was, in any event, entitled to wait until the time for rehearing and then for the first time come in. Its duty was to seek the first administrative remedy available to it before the Commission. If, having such notice as it was entitled to have at an earlier stage of the proceeding, it neglected to avail itself of such an opportunity, it may thus have foreclosed itself from seeking further relief." [61]

The Commission's disposition of appellant's petition for leave to intervene was entirely in keeping with congressional objectives and our prior decisions. We recognize, of course, that in special cases the circumstances may warrant a departure from strict adherence to the usual requirements. Situations of this kind are amply accommodated by the Commission's regulation permitting discretionary allowance of belated petitions.[62] This regulation, however, demands that in such instances the petition set forth the reasons why it could not have been filed within the normal time limits and authorizes allowance of intervention only if good cause for the delay is shown, conditions we consider entirely reasonable.[63] Appellant's petition, in plain violation of these provisions, set forth no reason at all. We are unwilling to find abuse in a failure to exercise a discretion that was never properly invoked.

Affirmed.

FAHY, Circuit Judge (concurring):

In concurring in the court's opinion I add that in my view Spanish International Broadcasting Co., appellant, comes within the classification of "known parties in interest" entitled under 47 U.S.C. § 309(e) to have participated in the hearing; but for the reasons set forth in the opinion of the court, based on appellant's failure to initiate steps available to it to gain such participation in a reasonably timely fashion, I do not think the error of the Commission entitled appellant in the circumstances to the relief it seeks in this court.

60. Red River Broadcasting Co. v. FCC, *supra* note 42, 69 App.D.C. at 5-6, 98 F.2d at 286-287. See also WLIL, Inc. v. FCC, *supra* note 29, 122 U.S.App. D.C. at 249, 352 F.2d at 725; Springfield Television Broadcasting Corp. v. FCC, 117 U.S.App.D.C. 214, 217, 328 F.2d 186, 189 (1964); Colorado Radio Corp. v. FCC, *supra* note 42, 73 App.D.C. at 227, 118 F.2d at 26.

61. Red River Broadcasting Co. v. FCC, *supra* note 42, 69 App.D.C. at 6-7, 98 F.2d at 287-288. See also Colorado Radio Corp. v. FCC, *supra* note 42, 73 App.D.C. at 227, 118 F.2d at 26.

62. See *supra* note 38.

63. WLIL, Inc. v. FCC, *supra* note 29, 122 U.S.App.D.C. at 249, 352 F.2d at 725. Compare Valley Television Co. v. FCC, *supra* note 28, 118 U.S.App.D.C. at 415, 336 F.2d at 919; Springfield Television Broadcasting Corp. v. FCC, *supra* note 60, 117 U.S.App.D.C. at 217, 328 F.2d at 189.