**Dennis J. MORRISSEAU**

v.

**MT. MANSFIELD TELEVISION, INC., and Federal Communications Commission.**

**Civ. No. 74–212.**

United States District Court,
D. Vermont.

Aug. 23, 1974.

Dennis J. Morrisseau, pro se.

Paul D. Sheehey, Burlington, Vt., for Mt. Mansfield Television, Inc.

David Reed, Asst. U. S. Atty., Rutland, Vt., for Federal Communications Commission.

## OPINION and ORDER

OAKES, Circuit Judge, Sitting by Designation.

This case, on an application for a temporary restraining order, was heard before the undersigned as acting United States District Judge for the District of Vermont on August 22, 1974, at Brattleboro, Vermont, with the plaintiff appearing pro se and defendants represented by counsel. Evidence was presented by plaintiff, certain stipulations were entered into, and a motion to dismiss for lack of jurisdiction was made orally at the time of hearing by defendants jointly. The motion for a temporary restraining order is denied, and the motion to dismiss for lack of jurisdiction is granted, with leave to plaintiff to amend his complaint within ten days from the date hereof, if he so desires.

Plaintiff's complaint, filed in the United States District Court on August 19, 1974, in its own words "arises under the United States Constitution and under the laws of the United States," including particularly 47 U.S.C. §§ 312(a)(7) and 315(a), the so-called equal time provisions of the Federal Communications Act. Plaintiff makes no claim of violation of the "fairness doctrine," so-called, as that doctrine was upheld in Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969), in that he does not say that there have been editorials or personal attacks against him to which he would be entitled to reply on WCAX–TV free time. Nor does he claim that WCAX–TV must provide coverage to the primary campaign. Rather, plaintiff claims that political campaigns are controversial per se and that once a station accepts an advertisement from one candidate it must provide some amount of "balancing" exposure to those candidates who cannot afford television advertisements. Such coverage might take the form, he suggested, of offering free time to all candidates, thus avoiding favoring only a few candidates with free time.

Under the § 312(a)(7) or § 315 equal time sections of the Communications Act, 47 U.S.C. §§ 312(a)(7), 315, the constitutionality of which was upheld in Farmers Educational & Cooperative Un-

ion v. WDAY, Inc., 360 U.S. 525, 79 S. Ct. 1302, 3 L.Ed.2d 1407 (1959), plaintiff does not claim that he has been denied access to paid advertising time or that any of his several opponents has been provided access to free time. Rather, repeating the reasoning above, the gist of his complaint is that because plaintiff is without the means to afford paid advertising, he (and other candidates) should be given free time, perhaps in a forum type format, to offset advantages accruing to his opponents better able than he to pay for advertising. So saying he attacks in this action the station's refusal to provide him (and other candidates) with free time and the FCC staff's refusal—still subject to appeal to the full Commission—to order the station to do so.

As such for the reasons stated below in Part I, he has brought his action before exhausting administrative remedies and in the wrong court. His complaint also contains a prayer for a temporary restraining order against the defendants "to prevent the broadcast over WCAX of paid-for political advertisements of candidates for Representative to Congress until such time as Defendants shall make available to all candidates for said office such air time as will fairly balance said paid-for advertisements, said time to take whatever form and to be made available in whatever amounts as to this Court shall seem appropriate." Because there is no jurisdiction in this court it might be unnecessary to decide this motion, but in the interests of judicial economy, in the event the dismissal for lack of jurisdiction is appealed, or a restraining order pending appeal is sought, the motion is denied and the reasons for denial are set forth in Part II.

## PART I.  LACK OF JURISDICTION.

■ The oral motion to dismiss the action is granted. First, the action is untimely. Plaintiff has not exhausted his administrative remedies. The full Commission has yet to act. Plaintiff was advised by letter from the FCC staff dated August 13, 1974 (Ex. 6) that application for review of staff action refusing to order the station to provide time by the full Commission was available and could be made within 30 days. While plaintiff urges that there is but short time to the primary, his application to the FCC could have been made some time ago. The full Commission is quite capable of acting quickly, when called upon to do so. Failure to exhaust administrative remedies precludes judicial relief. Spanish International Broadcasting Co. v. FCC, 128 U.S.App. D.C. 93, 385 F.2d 615 (1967).

Presumably plaintiff would argue that such an appeal to the full Commission would be futile, so that such exhaustion is unnecessary. *Ibid. See* 3 K. Davis, Administrative Law Treatise § 20.03. The futility argument would be based on the Commission's own ruling in In re Spock, 44 F.C.C.2d 12 (1973), which affirmed a position previously taken in the public notice of March 16, 1972, entitled "Use of Broadcast and Cablecast Facilities by Candidates for Public Office," 37 Fed.Reg. 5796, that the provisions of § 312(a)(7) of the Communications Act, 47 U.S.C., require commercial stations "either to provide reasonable amounts of free time or to permit the purchase of reasonable amounts of time; they are under no obligation to afford both . . . . Legislation designed to require licensees to provide candidates with free time has not been enacted." 44 F.C.C.2d at 20. This position is not, plaintiff would argue, a new one with the Federal Communications Commission, but is one that it basically adopted in the so-called *Zapple* ruling, FCC letter to Nicholas Zapple, Communications Counsel, Senate Committee on Commerce, 23 F.C.C.2d 707 (1970), where in effect it was said that an imbalance in the financial resources of candidates could, in the public interest, give rise to an imbalance in their use of broadcast facilities. *See generally* Columbia

Broadcasting System, Inc. v. FCC, 147 U.S.App.D.C. 175, 454 F.2d 1018, n. 22 (1961) and accompanying text. The full Commission, however, might be persuaded to change its mind—it has done so often before, as for example in connection with the rules relating to prime time access. In any event, it should be able to give him prompt review of the staff action.

■ But even if plaintiff's application for review would be futile and the exhaustion of remedies doctrine hence inapplicable, there is no jurisdiction in the federal *district* court to hear this case. Any proceeding to enjoin, set aside, annul or suspend any order of the Federal Communications Commission must under 47 U.S.C. § 402 be taken either to the Court of Appeals for the District of Columbia or the Court of Appeals in which one of the parties resides (here the Second Circuit Court of Appeals) in accordance with the provisions of that section and with the provisions of 28 U.S.C. § 2342. Under § 2342 "The court of appeals has *exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), *or to determine the validity of* (1) all final orders of the Federal Communications Commission made reviewable by section 402(a) of title 47; . . . . " (emphasis supplied). Thus even though plaintiff alleges that his claim is based on the United States Constitution, it is an order of the Commission (here of its staff, as aforesaid) denying him relief of which he complains. Here he does not complain of the lack of validity or constitutionality of the equal time or other underlying statutes governing the Commission: Paragraph 10 of his complaint, for example, alleges that "the hereinbefore described acts, actions, rulings, and ommissions [sic] of Defendants WCAX and the FCC are, all of them, contrary to law and the United States Constitution . . . " because they "establish, in effect, a means test for achieving federal office . . . . "

## PART II.  DENIAL OF MOTION FOR TEMPORARY RESTRAINING ORDER.

But even if this court had jurisdiction, it would deny a temporary restraining order. Temporary relief is an extraordinary remedy, *e. g.*, Austin v. Altman, 332 F.2d 273 (2d Cir. 1964), to be granted only where the plaintiff has (1) made a strong showing that he is likely to prevail on the merits, (2) shown that without such relief he will be irreparably injured, (3) shown that there is little likelihood that others will be substantially harmed, and (4) shown that the public interest will not be thereby harmed. Commonwealth of Pennsylvania ex rel. Creamer v. United States Department of Agriculture, 469 F.2d 1387 (3d Cir. 1972). Generally, temporary restraining orders are issued only to aid in maintaining the status quo pending further hearing on the merits or on obtaining preliminary injunctive relief.

■ Here plaintiff has failed to satisfy the court that he has any substantial likelihood of success on the merits, and, indeed, that the court has jurisdiction. Nor has the plaintiff made a sufficient showing of irreparable injury or that the grant of a temporary restraining order might not substantially harm other parties. The overall public interest may very well not lie with plaintiff. In addition, the grant of a temporary restraining order in the terms requested here would change rather than maintain the status quo. All of these points are discussed *seriatim* below.

■■ Plaintiff's contention that because he is a candidate without means he cannot afford to purchase advertising time so as to compete with those candidates able to afford to purchase advertising time has an initial or surface appeal. It is, contrary to the court's impression at oral argument on the motion, not a unique claim. *See, e. g.*, Comment, A Constitutional Remedy for the High Cost of Broadcast and Newspaper Ad-

vertising in Political Campaigns, 60 Calif.L.Rev. 1371 (1972), where the author proposes that the equal protection clause forbids broadcast licensees and newspaper publishers from discriminating in the allocation of campaign advertising on the basis of ability to pay. But only recently the Supreme Court has made it clear in holding that the Communications Act does not require broadcasters to accept editorial advertisements that there is "not a common carrier" right of access imposed on broadcasters for all persons wishing to speak out on public issues. Columbia Broadcasting System, Inc. v. Democratic National Committee, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). To the extent that plaintiff's constitutional argument rests on the equal protection clause as construed in Bullock v. Carter, 405 U.S. 134, 92 S. Ct. 849, 31 L.Ed.2d 92 (1972), where the Court struck down a Texas filing fee scheme that barred candidates from running in primary elections unless they paid certain fees ranging up to $8,900, and its progeny, the only requirement is that the Communications Act be reasonably necessary to the accomplishment of the important and legitimate objectives of encouraging political discussion and preventing unfair and unequal use of the broadcast media. Just as the Ninth Circuit in Paulsen v. FCC, 491 F.2d 887 (9th Cir. 1974), considered that the Communications Act "passes constitutional muster," 491 F.2d at 892, I believe it does so.

■ On the subject whether plaintiff has suffered or is likely to suffer irreparable harm, he argues, of course, that he may lose a primary election. On the other hand, traditionally in American politics candidates who have wished to advertise by the use of television or otherwise have, or committees on their behalf have, sought campaign contributions to enable them to purchase campaign advertising. Indeed, while the whole process of seeking and making campaign contributions can be subject to the greatest abuse, there is no showing by plaintiff that, were efforts made by him in that direction or his supporters so inclined, he could not lawfully and properly raise substantial sums for the purpose in question. It may well be that the abuses of the campaign contribution system should be remedied, either by regulation on expenditures, reporting, limitation of spending, or by public contributions to would-be candidates or parties in the form of tax deductions or voting taxes, but it is hardly within the province of this court to engage in any such evening-up or regulatory process. Beyond this plaintiff's argument presupposes the inefficacy of other media and other campaign tactics to make one's position or candidacy or name known.

■ In terms of injuries to others—in this case to a private commercial television station which does business by selling time—it may be that if the court were to order WCAX–TV to provide time to plaintiff (and the other primary candidates for Representative to Congress now running in Vermont) the court would in some way itself be abridging the first amendment. *See* Columbia Broadcasting System, Inc. v. Democratic National Committee, supra. As Professors Thomas I. Emerson and Harry Kalven, Jr., say, as quoted by Mr. Justice Douglas concurring in judgment in that case, 412 U.S. at 151, 153, 93 S. Ct. at 2110:

> [A]ny effort to solve the broader problems of a monopoly press by forcing newspapers to cover all "newsworthy" events and print all viewpoints, under the watchful eyes of petty public officials, is likely to undermine such independence as the press now shows without achieving any real diversity.

T. Emerson, The System of Freedom of Expression 671 (1970).

> It is an insufficiently noticed aspect of the First Amendment that it contemplates the vigorous use of self-help by the opponents of given doctrines, ideas, and political positions. It is not the theory that all ideas and positions are entitled to flourish under

freedom of discussion. It is rather then that they must survive and endure against hostile criticism.

H. Kalven, 6 The Center Magazine, No. 3, pp. 36–37 (May/June 1973). As Mr. Justice Douglas said, "If the Government is the censor, administrative *fiat*, not freedom of choice, carries the day." The plaintiff's argument understandably relies on the fact, perhaps unfortunate to Vermont, that WCAX–TV has more or less of a monopoly on commercial television broadcasting in Vermont so that he cannot go to another commercial televisor to get his viewpoint or candidacy across, though what following the public broadcasting station has, or what time if any it has devoted to the Congressional primary campaigns does not appear in this record. This, however, is a matter for future licensing procedures. If indeed WCAX–TV is not serving the public interest in sufficiently carrying coverage of political campaigns for high office in the state of Vermont, or by, for example, using its interview show format, "You Can Quote Me," or the like, to interview primary candidates in as important a race as the Congressional one, this is a matter for the hearings to be held by the FCC when the WCAX–TV license to the station comes up for renewal. Again, however, it is not a matter for judicial intervention in the name of free speech, unfunded candidates or otherwise.

In terms of the court's decision serving the public interest, what has been said immediately above on the subject of interference with the right of others is equally applicable.

As previously stated, the temporary restraining order would require the giving of time and therefore would in no way *maintain* the status quo.

For the foregoing reasons the motion for a temporary restraining order is denied and the complaint dismissed for lack of jurisdiction, with leave to amend the complaint within ten days from the filing hereof.